514 P.2d 797

**STATE of Utah, In the Interest of Mario A., et al.**

**No. 13030.**

Supreme Court of Utah.

Oct. 5, 1973.

David S. Dolowitz, Edward B. Gesas, and David E. Littlefield, Salt Lake County Bar Legal Services, Salt Lake City, for appellants.

Vernon B. Romney, Atty. Gen., John Spencer Snow, Asst. Atty. Gen., Salt Lake City, for respondent.

ELLETT, Justice:

The mother of the children named above appeals from an order of the Juvenile Court which deprived her permanently of all parental rights to her children. The order was made after a hearing pursuant to Section 55–10–109(2), Utah Code Annotated 1953 (as amended 1973 Pocket Supplement).

The statute [1] provides as follows:

(1) The court may decree a termination of all parental rights with respect to one or both parents if the court finds:

(a) That the parent or parents are unfit or incompetent by reason of conduct or condition seriously detrimental to the child; or

(b) That the parent or parents have abandoned the child. It shall be prima facie evidence of abandonment that the parent or parents, although having legal custody of the child, have surrendered physical custody of the child, and for a period of six months following such surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child;

. . .

\*  \*  \*  \*  \*  \*

1. Section 55–10–109(1), U.C.A.1953 (as amended 1973 Pocket Supplement).

Appellant's claims on which she seeks to reverse the lower court are:

1. The appellant's parental interest in her children should not have been permanently terminated, as the State of Utah, by and through its Division of Family Services, failed to meet its affirmative duty to provide treatment and assistance to the appellant to reunite her with her family.

2. The evidence is insufficient to support the finding of the court that the appellant is unfit or incompetent by reason of her conduct or condition to the serious detriment of her children.

The evidence before the court showed that appellant has been in the State Mental Hospital four times and in the University of Utah Medical Center once for psychological disorders.

The ages of the children at time of trial were as follows: Mario, 7½; Paula, 6½; and Nicolas, 4½.

On September 11, 1968, the three children were placed in the custody of the Division of Family Services. Three months later Mario was returned to the appellant, although he still remained under the jurisdiction of the Juvenile Court. He was returned to foster-home care in October, 1969, because of neglect, and all three children have remained in foster homes since that time.

The caseworkers assigned to appellant's case prescribed certain conditions for her to follow in order to regain custody of the children, viz.:

1. That she attend after-care clinics.

2. That she visit her children, with the understanding that succeeding visits would be progressively longer if she did so.

3. That she improve her living conditions.

4. That she maintain contact with the caseworkers.

She failed utterly to conform to the requirements. She failed to attend the clinics for those released from mental institutions. During a period of over two years she hardly saw her children. She failed to visit with them on two occasions when appointments were set up for the visit and made no effort through the Juvenile Court or through the Division of Family Services to obtain assistance. She made no effort to improve her living conditions. Her allotment from public welfare was not sufficient for her to secure a proper home wherein she might receive the children. However, it appeared from the testimony that an extra allowance could have been made if in fact she was ready to receive her children and properly care for them. She failed to maintain contact with her caseworker, and her whereabouts were mostly unknown.

From June 9, 1969, to January 4, 1972, the date of trial, she changed her address

ten times and frequently went under an assumed name.

A clinical psychologist examined the appellant. He testified in court, and his written report is in evidence. His examination as revealed by his testimony and report showed that the appellant had been a bright young woman with an I.Q. of 125 or 130 but that she was functioning at about 100 at the time of the examination, her verbal I.Q. being 107 and her performance I.Q. only 90. He stated that her 30 to 40 I.Q. decrement was due to her conflicts and problems and her resort to escape from reality; that apparently the main dulling effect on her intellect was a psychotic process. He classified her as "a residual schizophrenic or a chronic undifferentiated schizophrenic." He further found that while she was functioning quite well, her recovery was only partial and could perhaps result in psychotic symptoms again under sufficient stress and that she would escape from those stresses by running away, by drifting, and by not becoming involved. He testified that it was his opinion that it would be for the best interest of the children to be placed in a home for adoption.

The caseworkers who had served the children also testified that the children would be better off if adopted than if they were returned to the custody of the appellant.

█ While one feels deeply for a parent who is deprived of a child, that feeling must not overcome the duty placed upon the courts to act in the best interest of the child. In this case the children have spent a great part of their lives away from their natural mother, who has shown very little interest in them for the past two and one-half years. True it is that she was poor and could not lavish gifts upon them and could not afford visits every day, but the effort she put forth to visit the children was practically nil. She never requested additional funds for use in traveling to visit the children, and she did not phone them or phone to inquire about them.

She now contends that her whereabouts could have been determined by the caseworkers had they really been interested in getting her to see the children. Although she seldom lived longer than three months in one place and went under assumed names, she blames the caseworkers for not being better sleuths.

█ We do not think the caseworkers are obligated to go to the extremes which appellant claims they should have done in order to kindle and increase a small flame of desire to be reunited with her children. We think if she was to escape the provision of the statute regarding evidence of abandonment, the duty was upon her to manifest an interest within the six-month period after loss of custody. In this case

she failed to manifest a firm intention to resume physical custody of her children for over two years.

The evidence before the court was sufficient to justify the order made. These small children should be placed in a proper home for adoption where they can feel that they belong to a family group.

The father of the children is divorced from appellant. He was served in this matter but made no appearance. Neither parent has ever contributed to the support of the children.

The judgment is affirmed.

CALLISTER, C. J., and HENRIOD, CROCKETT and TUCKETT, JJ., concur.