589 P.2d 244 (1978)
STATE of Utah in the INTEREST OF R____ J____, H____ J____, D____ J____, persons under eighteen years of age.
No. 15386.
Supreme Court of Utah.
December 15, 1978.
David A. Goodwill, Salt Lake City, for natural parents.
Robert B. Hansen, Atty. Gen., Franklyn B. Matheson, Asst. Atty. Gen., Salt Lake City, David E. Littlefield and Patricia S. Allred, of Littlefield, Ritchey & Cook, Salt Lake City, for the State.
HALL, Justice:
The natural parents appeal a juvenile court order terminating their parental rights as to three of their children.[1] The lower court permanently deprived the parents of all rights as to "D" (born July 31, 1974), and "H" (born November 11, 1972). A similar order was made as to "R" (born January 16, 1968), but afforded the child the right to visit with her natural parents as she desired. All three of the children were ordered to be placed for adoption. The parents seek reversal of the order, or in the alternative, modification of the order to allow the two younger children (D and H) to maintain contact with their parents.
Most of the testimony rendered at the juvenile hearing concerned the psychological/psychiatric makeup of the parents and *245 their children.[2] The father was characterized as having a severe personality disturbance with impulse disorder and borderline IQ. He is subject to rapid mood shifts and aggressive impulses without the ability to show good judgment. He admitted to having assaulted his children on numerous occasions, and of lacking the ability to communicate adequately with both his children and his wife. He has been unemployed for most of his married life, has attempted suicide on two different occasions and has had one psychiatric hospitalization.
The mother is a deaf-mute and suffers from either organic brain damage or schizophrenia. She is unable to deal with concepts such as "good or bad" and is generally able to relate to her children only as playmates. She was found to be unable to use appropriate discipline or to provide an environment which would stimulate intellectual or emotional growth in her children. Neither parent could give a developmental history of the children, and could not really distinguish one from another. Also, neither parent has been able to respond to or cooperate in assistance offered by Social Services over a period of several years.[3]
The evidence varied somewhat as to the present status and future progress of the children, but did reveal that the past history showed only stagnation and deplorable parental care in the home. D was found to have gross and fine motor coordination problems which were attributed to early deprivation. She lacked spontaneity which the doctors attributed to lack of stimulation in her home. Likewise, at 3 1/2 years of age, H had no speech, was not toilet trained, and was at least one year retarded in his development. While in treatment outside the home, improvement was noted in both the children in almost all areas, only to regress again when returned home for any significant period of time. The testimony indicated that R is essentially a healthy child with no psychiatric disabilities. One of the doctors attributed this to a tremendous personality strength which persists even in the face of an environment which seems to be devastating for other children in the family. She has had some delinquency problems but has accumulated some social skills and is of normal intelligence.
U.C.A., 1953, 78-3a-48 makes the following provisions:
(1) The court may decree a termination of all parental rights with respect to one or both parents if the court finds:
(a) That the parent or parents are unfit or incompetent by reason of conduct or condition seriously detrimental to the child; ... .
Although courts are reluctant to perform social surgery in permanently terminating the natural parent-child relationship,[4] the welfare of the child is the paramount consideration.[5] The evidence supports the juvenile court's conclusion that the parents have seriously neglected their children and that neither parent is capable of providing a nurturing environment for them. There is substantial evidence to support the following finding of the court below:
... [T]he natural parents are socially and emotionally retarded and unable or unwilling to psychologically, emotionally and/or socially stimulate the above children to the degree that they are failing to develop properly and said failure is seriously detrimental to the welfare of said children.
*246 Based on the testimony given at trial and the court's analysis thereof[6] we affirm in toto the decision as to D and H. However, there are inherent inconsistencies in the court's decision relating to R which purports to permanently terminate parental rights and in the same breath say (in the juvenile court's own language) "it would be impossible to break ties with her natural parents." U.C.A., 1953, 78-3a-2(14) provides that "`[t]ermination of parental rights' means the permanent elimination of all parental rights and duties, including residual parental rights and duties..." Residual parental rights and duties include right to reasonable visitation.[7]
The order of the juvenile court affording R visitation privileges at this time (well in advance of a proposed adoption) is, at the very least, premature for it fails to take into consideration the facts and circumstances as may be attendant at such future time when an actual adoption is proposed which, foreseeably, could be substantially different than at present. For example, it may be an insurmountable problem to search out prospective adoptive parents willing to in any way "share" their parental rights and responsibilities with the natural parents.
Further, the order is in excess of the powers conferred upon the juvenile court and it in fact usurps the power of the district court which has exclusive jurisdiction in matters of adoption.[8]
We affirm as to the termination of parental rights over all three children, but vacate that portion of the order which purports to afford R an on-going privilege of visitation with her natural parents.
ELLETT, C.J., and WILKINS and CROCKETT, JJ., concur.
MAUGHAN, Justice: (concurring and dissenting).
That part of the opinion to which I render dissent concerns R. I would leave with R the discretion to visit her natural parents and her two younger siblings. As I view the evidence, the tie to her natural parents and her two younger siblings are of such strength as to render them unforgettable; and, if severed, potentially traumatic. R will be eleven years of age next month (at age twelve her consent must be obtained prior to adoption.) Because of her age, her personality, and her mental alertness; I think it would be advisable and quite proper to leave with her the discretion to visit with her natural parents and her two younger siblings.
NOTES
[1] The parents have 5 other children. One of them, "C" (born January 3, 1962), was originally included in this petition but was dismissed out on the State's own motion because of the severity of her disability and her age.
[2] The point on appeal that the examinations of the parents were invalid due to lack of notice and hearing is totally without merit. U.C.A., 1953, 78-3a-23 permits examination after due notice and hearing which was held in counsel's presence, who had actual input in the testing process to be used. Furthermore, no timely objection was made to the adequacy of notice, the nature of the hearing, the testimony of the examiners, or the order itself.
[3] As to the State's duty to provide assistance to parents before permanently depriving them of their children see Interest of Walter B., Utah, 577 P.2d 119 (1978).
[4] In Interest of Winger, Utah, 558 P.2d 1311 (1976).
[5] Miller v. Miller, 8 Utah 2d 290, 333 P.2d 945 (1959); State in Interest of A., 30 Utah 2d 131, 514 P.2d 797 (1973).
[6] The general rule that we will usually defer to the trial court's factual findings, applies to juvenile proceedings. State v. Dade, 14 Utah 2d 47, 376 P.2d 948 (1962).
[7] U.C.A., 1953, 78-3a-2(10).
[8] U.C.A., 1953, 78-30-7; It is to be noted that the power of the district court to impose conditions and restrictions upon adopting parents is effectively limited by the provision of U.C.A., 1953, 78-30-8 which requires an agreement to be executed by the person adopting.