STATE of Utah in the Interest of
M.A.V., A person under eighteen
years of age, Plaintiff
and Respondent,

v.

Balbino VARGAS, Defendant
and Appellant.

No. 860214–CA.

Court of Appeals of Utah.

May 4, 1987.

Quinn D. Hunsaker, Brigham City, for
appellant.

David L. Wilkinson, Atty. Gen., Diane
Wilkinson, Asst. Atty. Gen., Roger Baron,
Deputy Co. Atty., J. Paul Stockdale, Og-
den, for respondent.

Craig J. Simper, Brigham City, Guardian
Ad Litem.

Before ORME, DAVIDSON and
GARFF, JJ.

## OPINION

ORME, Judge:

The parental rights of Balbino Vargas, the natural father of M.A.V., were terminated by the First District Juvenile Court for Box Elder County on grounds that the father was "unfit or incompetent by reason of conduct or condition which is seriously detrimental to the child." Utah Code Ann. § 78–3a–48(1)(a) (1986). Vargas seeks reversal of the judgment or a new trial.

The child is a citizen of the United States, having been born April 27, 1979, in Arizona. He was born to appellant Balbino Vargas, a Mexican national and illegal alien, and a mother whose nationality, identity, and whereabouts are unknown. At some point, Vargas and his son located in Brigham City, where they lived with Vargas's girlfriend and her daughter, also fathered by Vargas. The child first came under consideration by the Utah authorities in 1983, when he was bitten in the face by a vicious dog while he was at the home of Vargas's girlfriend. The Division of Family Services attempted to locate the child's by then deported father or his natural mother. The attempts were unsuccessful and the Division successfully petitioned to have the child placed in temporary custody in August of 1983.

By October of 1984, Vargas had returned to the United States, again illegally, and was employed as a farm worker in California. Based on favorable reports from the Imperial County Welfare Department, on October 24, 1984, the trial court ordered the child to be transported to California. It was contemplated that the child would remain in the legal custody of the Utah Division of Family Services while placed with Vargas and that California authorities would monitor the placement.

The petitioners Marlene and Jack Apadaca, former neighbors of Vargas and in whose temporary custody the child had previously been placed, took exception to the court's order. They petitioned the court to rescind its order claiming the existence of "new evidence" about the natural mother's whereabouts. By separate motion, they asked the court to stay its order, claiming they had petitioned the court for a determination whether the child was in danger of abuse if he were returned to his father. The court stayed its October 24 order and directed a further investigation.

On June 5, 1985, the court held a review hearing on the original dependency petition to determine whether the child should remain in temporary custody. Apprised of the proceeding, Vargas had returned to Utah to attend the hearing. Upon his arrival in Box Elder County, he was arrested on outstanding warrants. At the June 5 hearing, at which Vargas was present, temporary custody by Family Services was continued in effect and a trial date on the Apadacas' petition was set for June 28, 1985, a date corresponding to Vargas's scheduled release from the Box Elder County jail. At the June 28 hearing, Vargas was again present. The June 28 hearing has particular significance for one of the issues raised on appeal, and we accordingly focus on it in some detail.

The hearing opened with Vargas's attorney acquainting the court with his inability to have fully prepared Vargas's case and asking that the matter be continued upon conclusion of petitioners' case in chief and reconvened at a later date for presentation of Vargas's case in chief. The attorney also observed that while others had been treating the petition as one for termination of parental rights, in fact the petition only sought a determination that the child faced abuse if returned to his father. As such, it was facially inadequate to commence a termination proceeding under § 78–3a–48. The court indicated a willingness to proceed with the hearing, postponing for subsequent consideration the legal effect of the petition in issue. Vargas's attorney persuaded the court both that such a proceeding would be pointless and that the pending petition clearly did not raise termination of Vargas's parental rights. The Apadacas' attorney requested leave to amend the petition to seek termination of Vargas's parental rights and the request was granted. Vargas's attorney insisted that the formal service and 10–day provisions of § 78–3a–48 be complied with,

which necessarily meant the hearing would have to be postponed.

The trial court was rightly concerned that these procedural delays might mean Vargas would be deported again before trial could be held. The court was advised, however, that Vargas had remained free from seizure by the immigration authorities only because, immediately upon his scheduled release from the county jail, a "friendly" misdemeanor information charging criminal child abuse was filed against him. The information allowed Vargas to be taken into custody again by county authorities and the county's custody of him precluded his seizure by immigration officials. The court was advised the information could be kept pending and Vargas remain in county custody, and thereby in the jurisdiction, until trial was concluded. With the guidance not only of his appointed attorney but also a Mexican consular official and an immigrants' rights advocate, Vargas advised the court he did not wish to remain confined in the county jail, even though it was clear the only alternative was immediate deportation.

Consistent with Vargas's wishes, the misdemeanor information was dismissed upon the conclusion of the hearing, whereupon Vargas was released from custody by the county, taken into custody by immigration officials, and promptly deported. In due course the amended petition was filed and, pursuant to stipulation made at the June 28 hearing, service upon Vargas was effected by serving an official at the Mexican consulate. Hearings on the amended petition were held on October 24 and 25,

November 8, and November 22, 1985. At the November 22 hearing the court expressed concern about the father's. continued inability lawfully to return to this country and testify. The court ordered a continuance of the hearing and directed a telephonic "deposition" to be taken of Vargas on December 6, 1985, with translators and counsel present.[1] A transcript was prepared and this deposition, as well as other testimony, was presented at a final hearing on March 21, 1986.

Other than a challenge against the sufficiency of the evidence, there are only two issues on appeal: first, whether the trial court abused its discretion by continuing the trial initially convened for June 28 which, it is contended, had the effect of depriving the father of his ability to attend trial; and second, whether the father was advised of his parental inadequacies and given sufficient assistance to correct those flaws before his parental rights were terminated.

### Right to Attend Trial

■ A hearing to terminate parental rights cannot be held earlier than ten days after service of summons on the parties. Utah Code Ann. § 78–3a–48(2) (1986). In addition, the parties must be advised of their right to counsel. *Id.* Parents do not have an absolute right, by statute, to attend the hearing, but only to receive proper notice and to be advised of their right to counsel.

■ Vargas in effect concedes he had no absolute statutory or constitutional right[2]

---

1. Much is made on appeal of the alleged fact that the trial judge did not participate in the telephonic hearing or have an opportunity to observe Vargas's demeanor. The transcript, however, shows the judge presided over the "deposition" proceeding. Thus, he at least *heard* Vargas's testimony "live" and, as noted, had seen and heard from Vargas at the June 5 and June 28 hearings. The court accordingly had more opportunity to take the measure of Vargas and evaluate his credibility, demeanor, and attitude than would ordinarily occur where a deposition transcript had to be relied upon.

2. Of course, parents have a fundamental liberty interest in maintaining family relationships with their children. *Meyer v. Nebraska*, 262 U.S.

390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *In re Castillo*, 632 P.2d 855, 856 (Utah 1981). Proceedings in which parental rights are terminated must accordingly comport with the requirements of Due Process. *Santosky v. Kramer*, 455 U.S. 745, 752–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). This does not mean, however, that parents have an absolute right to be in attendance at such proceedings. *See, e.g., Pignolet v. State Dept. of Pensions and Security*, 489 So.2d 588, 591 (Ala.App.1986) ("Where there is representation by counsel and an opportunity to present testimony through deposition, then due process does not require that an incarcerated parent be allowed to attend the termination hearing."); *Thompson v. King*, 393 N.W.2d 733, 736 (N.D.1986) (Due Process satisfied where in-

to attend the trial by only arguing that the trial court abused its discretion in conducting the proceeding at times when Vargas could not, as a practical matter, attend. We must reject any suggestion that the trial court abused its discretion in continuing the trial from June 28. Vargas chose to take maximum advantage of the safeguards provided in § 78–3a–48. Vargas argued against the taking of evidence at the June 28 hearing when he was present and the court was willing to proceed. Vargas chose to be released from county custody even though continuation of such custody was the only method for avoiding deportation and providing him a means to remain lawfully in the jurisdiction and be present at trial. Especially in view of his ongoing representation by counsel and others and the conducting of a special telephonic hearing to enable Vargas to participate, no abuse of discretion has been shown. On the contrary, the court's concern about Vargas's participation and the steps it took and tried to take to facilitate his participation are commendable. *See Summers Children v. Wulffenstein,* 560 P.2d 331, 335 (Utah 1977) (termination order upheld as against father who did not attend trial where father's interest was ably represented by counsel and father's absence was a "circumstance of his own volition").

### Right to State Assistance and Opportunity for Rehabilitation

■ Vargas also alleges that the State must advise parents of their parental deficiencies and attempt to rehabilitate them as parents before parental rights can be lawfully terminated. He supports this claim with a passage from *State v. Lance,* 23 Utah 2d 407, 464 P.2d 395 (1970). In *Lance,* the Utah Supreme Court overturned a termination order because the evidence connecting the children's problems with the parental behavior did not demon-

strate that the behavior was seriously detrimental to the children. 23 Utah 2d at 412–13, 464 P.2d at 398–99. The Court also stated in *Lance:*

> Another factor which strongly mitigates against the judgment of the court is the total lack of evidence that Mrs. Lance was informed of the alleged inadequacies of the environment she was providing so that she might have an opportunity to improve these conditions. *Since the species of her neglect involved rather subtle psychological factors*—interference with the adequate social, educational, and psychological adjustment of her children—justice requires that she be informed of the condition and be advised of appropriate remedial action.

23 Utah 2d at 413, 464 P.2d at 399 (emphasis added). It is clear that the *Lance* requirement of particularized notice and efforts at "remedial action" prior to commencement of termination proceedings applies only to more exotic forms of abuse or neglect and certainly not to a consistent pattern of obvious physical abuse and neglect. It is important to note that in *Lance,* unlike the present case, there was no showing of blatant physical and psychological abuse, to say nothing of long-standing serious physical neglect.

Our conclusion that the *Lance* requirement does not apply in cases like the instant one is supported by a recent Utah Supreme Court case. In *In re J.C.O.,* 734 P.2d 458 (Utah 1987), the Supreme Court noted that the above-quoted "comment in *Lance* was dicta and does not, by its own terms, apply when children are physically endangered by abuse or neglect."[3] *Id.* at 463.

■ Even if there were some general requirement of rehabilitative or remedial state assistance as a virtual condition precedent to valid termination of parental

---

carcerated parent is permitted to appear in termination proceeding through counsel and his deposition testimony is considered).

**3.** In *In re Walter B.,* 577 P.2d 119 (Utah 1978), *Lance* was relied on for the proposition that notice and "reasonable efforts of assistance" are

conditions precedent to termination. 577 P.2d at 124. This broader statement concerning the need for remedial efforts was also dicta, *see In re J.C.O.,* 734 P.2d 458, 463 (Utah 1987), and in any event was made in an opinion which did not have majority support.

rights, regardless of how egregious or longstanding the particular pattern of abuse might be, still the trial court's order in this case would have to be affirmed. In this case, the trial court found that Vargas refused to acknowledge past deficiencies and expressed no desire to improve as a parent and to correct the abuses and neglect that were overwhelmingly evidenced by testimony at trial. This is tantamount to a finding that any efforts at rehabilitation in this case would have been altogether ineffectual. In no case would rehabilitative efforts be required where they would clearly be futile or where they would needlessly expose a child to a clear risk of further abuse.

### Sufficiency of the Evidence

 The statute allows parental rights to be terminated if, inter alia, the parent is "unfit or incompetent by reason of conduct or condition which is seriously detrimental to the child" or if the parent has abandoned the child. Utah Code Ann. § 78–3a–48(1)(a), (b) (1986). The State must prove the parent's unfitness or abandonment by clear and convincing evidence. *E.g., Santosky v. Kramer*, 455 U.S. 745, 768–69, 102 S.Ct. 1388, 1402–03, 71 L.Ed.2d 599 (1982); *In Interest of A.H.*, 716 P.2d 284, 287 (Utah 1986); *In re J.P.*, 648 P.2d 1364, 1377 (Utah 1982); Rule 21, Utah State Juvenile Court Rules of Practice & Procedure.

We have reviewed the extensive and thorough record and agree with the trial court that the petitioners proved by clear and convincing evidence that Vargas was unfit to the extent required by the statute. Although the father offered contrary testimony, both his own and that of witnesses he called, the trial court's ruling against him is amply supported. Testimony clearly and convincingly showed that the child was subjected to a pattern of extreme physical abuse, including being kicked, being repeatedly backhanded, having his hair pulled, and being thrown against a wall.

In addition, the evidence showed that on numerous occasions Vargas permitted his four year old child to consume alcoholic beverages to the point of inebriation. Var-

gas also gave the young child marijuana, to "prove his manhood," and instructed him on methods for usage of the substance. The father failed to provide adequate winter clothing for the child and kept him in uninhabitable surroundings, characterized as including filth, vomit, dog feces, and spoiled and decaying foods. Vargas often belittled the child, accusing him of being a "queer" when the child tried to show affection to his father or to others. At one time, shortly after the child had been bitten by the dog and was gravely ill, requiring surgery and special care, Vargas ordered the petitioners, who were then caring for the child, to return the child to his girlfriend's household, saying: "If he dies, he dies. I make more babies."

Appellant's parental rights were validly terminated. The judgment of the trial court is affirmed.

DAVIDSON and GARFF, JJ., concur.