STATE of Utah, in the Interest of
J.R.T., (5–19–81), Plaintiff and
Respondent,

v.

Terry TIMPERLY, Appellant.

No. 860254–CA.

Court of Appeals of Utah.

Feb. 22, 1988.

Bruce J. Udall, A. Paul Schwenke (argued), Schwenke & Udall, Murray, for appellant.

David L. Wilkinson, Atty. Gen., Diane Wilkins, Asst. Atty. Gen., Sandra Sjogren (argued), Asst. Atty. Gen., for the State.

Ann Wasserman, Salt Lake City, guardian ad litem.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Judge:

Appellant father appeals from a Second District Juvenile Court decree permanently depriving him of parental rights in and to his son. We affirm.

J.R.T. was born in Colorado on May 19, 1981. When J.R.T. was several months old, his mother left him and his father, the appellant in the instant case. Approximately one year later, appellant and J.R.T. moved to Utah to live with appellant's brother and his wife.

In 1984, appellant enrolled J.R.T. in the Social Integration Project, an outreach program for underdeveloped preschoolers. At age three and one-half, J.R.T.'s development was severely delayed academically, physically, emotionally, and socially.

In March 1985, appellant's brother and his wife decided to move to California. Appellant chose to return to Colorado for employment and to be near his parents and other family. A social worker with the Division of Family Services (DFS) suggested appellant leave J.R.T. in Utah in foster care so he could continue his specialized education. Once appellant established himself in Colorado, J.R.T. would rejoin him. Appellant agreed, and, on March 29, 1985,

his sister-in-law dropped the child off at the family support center. Appellant returned to Colorado. J.R.T. was placed in a foster home on April 2, 1985.

After a hearing on June 5, 1985, a court-ordered treatment plan, proposed by DFS, was prepared and sent to appellant. Under the plan, appellant was required to: 1) establish economic sufficiency and provide a suitable place to live; 2) maintain steady employment; 3) attend parenting classes; 4) comply with a reasonable visitation schedule; 5) submit to psychological evaluations; 6) contact Recovery Services to establish child support payments; and 7) furnish releases of information to DFS.

Between March 1985 and July 1986, a period of fifteen months, appellant did not visit or communicate with J.R.T. in any manner. Furthermore, appellant failed to comply with any of the terms and conditions of the treatment plan. Appellant also failed to respond to numerous attempts by DFS to contact him regarding his compliance with the plan. Consequently, on November 25, 1985, DFS filed a petition in the Second District Juvenile Court to terminate appellant's parental rights for abandonment, pursuant to Utah Code Ann. § 78-3a-48(1)(b) (1987). After a trial on August 11, 1986, the court entered its findings, conclusions, and decree permanently depriving appellant of his parental rights in and to J.R.T.

■ Utah Code Ann. § 78-3a-48(1)(a-d) (1987) allows a court to permanently terminate all parental rights under one of four showings: 1) parental unfitness, 2) abandonment, 3) substantial neglect, or 4) failure to communicate with the child for one year without just cause. The relationship between parent and child is a fundamental right and a liberty protected by the United States and Utah Constitutions. *In re J.P.*, 648 P.2d 1364 (Utah 1982). Hence, a parent may not be permanently deprived of his or her parental rights absent a clear and convincing showing of unfitness, abandonment, or substantial neglect. *Id; Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

*Abandonment*

■ On appeal, appellant first argues the evidence failed to meet the legal standard of "abandonment." The decision of a trial court to terminate parental rights will be disturbed on review only if the findings are clearly erroneous, i.e., if the findings are against the clear weight of the evidence. Utah R.Civ.P. 52(a); *State v. Walker*, 743 P.2d 191 (Utah 1987). *See also State, In Interest of E. v. J.T.*, 578 P.2d 831 (Utah 1978) (termination order disturbed only if evidence clearly preponderates against findings or if court abused discretion).

■ The Utah Supreme Court has defined abandonment as "conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." *State In Interest Of Summers Children v. Wulfenstein*, 560 P.2d 331, 334 (Utah 1977). The *Summers Children* Court established a two-pronged test for determining abandonment: first, whether the parent's conduct evidenced a conscious disregard for his or her parental obligations, and second, whether that disregard led to the destruction of the parent-child relationship. Abandonment may be proven by either the parent's objective conduct or the parent's expressed subjective intent. *In re J. Children*, 664 P.2d 1158 (Utah 1983). Section 78-3a-48(1)(b) supplements the Utah Supreme Court's definition of abandonment by outlining a prima facie case:

It is prima facie evidence of abandonment that the parent or parents, although having legal custody of the child, have surrendered physical custody of the child, and for a period of six months following the surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child[.]

■ The evidence is uncontroverted that between March 1985 and July 1986 appellant failed to contact J.R.T. in any manner. Furthermore, between May 1985

and March 1986, but for one phone call initiated by DFS, appellant also failed to contact DFS in any manner. These facts, under the statute, constitute prima facie evidence of abandonment. In order to rebut the presumption of abandonment, the duty was upon appellant to manifest a firm intention to resume physical custody of, or make arrangements for the care of, J.R.T. within the six month period. *State In Interest of A.*, 30 Utah 2d 131, 514 P.2d 797 (1973). Appellant offered no evidence of contact nor any reasonable excuse for his extended lack of contact with the child. Therefore, the evidence clearly supports the trial court's finding of abandonment.[1]

### The State's Duty To Assist

Appellant next argues the state failed in its duty to provide him assistance to comply with the terms and conditions of the treatment plan. In *State v. Lance*, 23 Utah 2d 407, 464 P.2d 395 (1970), a mother was permanently deprived of all parental rights to her son on the ground she was "unfit or incompetent by reason of conduct or condition which is seriously detrimental to the child." Utah Code Ann. § 55–10–109(a) (1965) (now section 78–3a–48(1)(a)). On appeal, the Utah Supreme Court established a state duty of notice and assistance in certain cases of parental unfitness:

> Since the species of her neglect involved rather subtle psychological factors—interference with the adequate social, educational, and psychological adjustment of her children—justice requires that she be informed of the condition and be advised of appropriate remedial action.

In subsequent termination for unfitness cases, the Court apparently broadened the state's duty beyond the factual limitation specified in *Lance*. In *Interest of Walter B.*, 577 P.2d 119 (Utah 1978), the Court stated "it is a condition precedent to termi-

nation that the conduct or condition alleged to be seriously detrimental to the child cannot be corrected, after notice and opportunity implemented, by reasonable efforts of assistance." *Id.* at 124. In *State, In Interest of E. v. J.T.*, 578 P.2d 831 (Utah 1978), the Court, noting *Lance*, held "a parent must be advised of alleged inadequacies and advised of appropriate remedial action so that she might have an opportunity to improve those conditions before those inadequacies may be made a basis for termination of parental rights." *Id.* at 836. Recently, in *In Interest of S.R.*, 735 P.2d 53 (Utah 1987), the Court, noting *Walter B.*, again held "the parent's conduct or condition must be such that it cannot be corrected, after notice and opportunity, with reasonable efforts of assistance." *Id.* at 56.

In contrast, in cases involving circumstances over which the parent has control, such as abandonment or physical abuse, the state does not have a comparable duty to assist. In *J.C.O. v. Anderson*, 734 P.2d 458 (Utah 1987), the trial court terminated a mother's and father's parental rights in their two children on the grounds of abandonment and unfitness. Referring to the duty established in *Lance*, the Court stated, "The foregoing comment in *Lance* was dicta and does not, by its own terms, apply when children are physically endangered by abuse or neglect. Furthermore, any notification of deficiencies, if and when required, need not be formal." *Id.* at 463.[2]

This Court has followed the reasoning of the Utah Supreme Court as expressed in *J.C.O.* In *State in Interest of M.A.V. v. Vargas*, 736 P.2d 1031 (Utah App.1987), we held:

> It is clear that the *Lance* requirement of particularized notice and efforts at "remedial action" prior to commencement of termination proceedings applies only to

---

1. Appellant spuriously contends the state failed to prove he was an unfit, neglectful, or abusive parent. Clearly, section 78–3a–48(1) provides alternative grounds for termination and does not require a showing of unfitness or neglect when the petition to terminate is based on abandonment.

2. The *J.C.O.* Court also referred to the language in *Walter B.* requiring that the state attempt to rehabilitate the parents as "dictum." *Id.*

more exotic forms of abuse or neglect and certainly not to a consistent pattern of obvious physical abuse and neglect [e.g., fifteen months of absolutely no contact]. It is important to note that in *Lance*, unlike the present case, there was no showing of blatant physical and psychological abuse, to say nothing of long-standing serious physical neglect.

*Id.* at 1034.

■ Abandonment, unlike cases of parental unfitness involving circumstances over which the parent has no control, "can only result from inaction or a course of conduct for which the parent is personally responsible." *In re J. Children*, 664 P.2d at 1159. In filing a petition to terminate parental rights for abandonment, the state is alleging no parental unfitness; hence, notice of alleged deficiencies in parenting skills is not required. The deficiency is obvious. Rehabilitation, i.e., manifesting a firm intention to resume physical custody or make arrangements for the child's care, is solely the responsibility of, and within the power of, the parent. The state is required by statute to provide the parent timely notice of the termination proceedings and to conduct a hearing. Utah Code Ann. § 78–3a–48(2) (1987). But beyond that, no further state duty to notify, assist, or rehabilitate the parent is required in an action to terminate parental rights based on abandonment.

■ In the instant case, appellant challenges the trial court's termination of his parental rights on the ground the state failed in its duty to assist him in complying with the treatment plan. Had appellant's parental rights been terminated on the ground of unfitness, the state's duty of assistance would be at issue and we would address his arguments. The trial court did not base its finding of abandonment on appellant's failure to comply with the treatment plan. Rather, the court found appellant abandoned J.R.T. as defined by section 78–3a–48(1)(b).

## Best Interest Of The Child

■ In *In re J.P.*, 648 P.2d 1364 (1982), the Utah Supreme Court invalidated a 1980 amendment to section 78–3a–48(1) which permitted the involuntary termination of parental rights upon a finding of best interest of the child without requiring a finding of parental unfitness, abandonment, or substantial neglect. The Court held the parents' constitutional rights were violated where the trial court did not make a finding of unfitness, abandonment, or substantial neglect. *Id.* at 1377. In repealing the amendment in 1985, the legislature failed to preserve the best interest standard as one element to be considered in termination proceedings. However, as the Court in *In re J.P.* held, "The best interest of the child has always been a paramount or 'polar star' principle in cases involving termination of parental rights, but it has not been the sole criterion." 648 P.2d at 1368. Although a best interest finding is no longer specifically required by statute, the best interest of the child remains a principal consideration in deciding whether to terminate parental rights.

■ The second prong of the objective abandonment test, whether the parental disregard led to the destruction of the parent-child relationship, satisfies the need separately to consider the best interest of the child. If the parent-child relationship has been destroyed by the parent's conduct, or lack of conduct, it is usually in the best interest of the child to terminate that relationship and allow the child an opportunity to establish a meaningful relationship with loving, responsible parents.

■ In the instant case, when J.R.T. was placed in foster care at almost four years of age, he was not toilet-trained, had a limited vocabulary, could not play with toys or clothe himself, and did not socialize well with others. After fifteen months in foster care, his progress was remarkable. At the time of trial, J.R.T. had enrolled in school and socialized well with other children. He was toilet trained and had a rapidly increasing vocabulary. J.R.T. could also clothe and feed himself.

Other evidence clearly shows the trial court's decision was in the child's best interest. The trial court found J.R.T. had

become bonded to his foster parents and siblings. He openly displays his and receives their affection and views them as his parents and family. He expressed no verbal recollection of either appellant or his natural mother. J.R.T.'s foster parents are desirous and able to adopt him. The trial court followed the second prong of the *Summers Children* test in concluding "[t]he conduct of the parents evidences a conscious disregard of the parent/child relationship and such conscious disregard has led to the destruction of the parent/child relationship...." It is in J.R.T.'s best interest to terminate appellant's parental rights and allow J.R.T. the opportunity to establish a permanent loving relationship with parents conscious of their responsibilities.

We hold the trial court's findings are not clearly erroneous, but rather abundantly supported by the record. We therefore affirm the decree permanently depriving appellant of all parental rights, including residual rights, in and to J.R.T.

BILLINGS and ORME, JJ., concur.