STATE of Utah, in the Interest of T.E. and B.E., Plaintiff and Respondent,

v.

S.E., Defendant and Appellant.

No. 870454–CA.

Court of Appeals of Utah.

Sept. 28, 1988.

James L. Shumate (argued), Cedar City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra L. Sjogren (argued), Asst. Atty. Gen., for plaintiff and respondent.

---

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant father appeals from a juvenile court decree permanently depriving him of parental rights on grounds he had abandoned two of his children. We reverse and remand.

Appellant is the father of three minor children, M.E., T.E., and B.E. M.E. and T.E. are mentally retarded while B.E. is extremely bright. In late 1982, appellant and the children's mother separated. Appellant moved to Elko, Nevada, while mother and children moved to Cedar City, Utah. In 1984, pursuant to a divorce decree, appellant was awarded custody of M.E., and mother was awarded custody of T.E. and B.E.

The Division of Family Services (DFS) removed T.E. and B.E. from their mother's home on several occasions on grounds of neglect. The two children were in foster care during most of the school years 1985–86 and 1986–87. After a six-week visitation with T.E. and B.E. during the summer of 1986, appellant requested custody of them. The juvenile court denied the request after a hearing on September 6, 1986. T.E. and B.E. remained in separate foster homes and DFS prepared a treatment plan for the natural parents designed to reunite T.E. and B.E. with either parent. Appellant never signed the treatment plan and did not communicate with the children for a period of eight months.[1] The children's mother did sign the plan and she was given weekly visitation with the children.

In February 1987, after a regularly scheduled visit with the mother, allegations were made that the children's stepfather had sexually abused T.E. Thereafter, in April 1987, DFS filed a petition to terminate parental rights to T.E. and B.E. of not only the mother, but also the appellant. A hearing on the petition was conducted on July 6, 1987. At the hearing, the following individuals testified: T.E.'s foster mother, B.E.'s foster mother, a DFS social worker, the children's mother, and the children's stepfather. The court terminated the mother's parental rights based on physical abuse and neglect. That portion of the juvenile court's decision is not appealed.

Appellant was not present at the hearing of July 6, 1987, apparently because of a work conflict. Appellant's attorney moved to continue the hearing as it pertained to appellant. Without expressly ruling on the motion for continuance, the court permanently terminated appellant's parental rights to T.E. and B.E.[2] Later, after a hearing on appellant's petition for a rehearing, the court specifically found abandonment as the basis for its decision. On appeal, appellant argues the evidence does not support a finding of abandonment.

The decision of a trial court to terminate parental rights will be disturbed on appeal only if the findings are clearly erroneous under Utah R.Civ.P. 52(a). "[T]he content of Rule 52(a)'s 'clearly erroneous' standard ... requires that if the findings ... are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made, the findings ... will be set aside." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). On the evidence presented in this case, the finding of abandonment must be set aside.

Utah Code Ann. § 78–3a–48(1) (1987) allows a court to terminate a parent's rights to a child if the court finds any one of the following:

(a) that the parent or parents are unfit or incompetent by reason of conduct or condition which is seriously detrimental to the child;

(b) that the parent or parents have abandoned the child. It is prima facie evidence of abandonment that the parent or parents, although having legal custo-

---

1. The record does not contain a copy of the treatment plan. We are, therefore, unable to comment on the reasonableness of the plan's terms.

2. Rights to and custody of M.E. were not challenged. Appellant has retained custody of M.E. throughout these proceedings.

dy of the child, have surrendered physical custody of the child, and for a period of six months following the surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child;

(c) that after a period of trial, during which the child was left in his own home under protective supervision or probation, or during which the child was returned to live in his own home, the parent or parents substantially and continuously or repeatedly refused or failed to give the child proper parental care and protection; or

(d) has failed to communicate via mail, telephone, or otherwise for one year with the child or shown the normal interest of a natural parent, without just cause.

The trial court based its decision on abandonment under subsection (b) of the statute.[3] Under that subsection, the trial court may permanently terminate a parent's rights to a child where the court finds, on clear and convincing evidence, the parent has abandoned the child. *In re J.P.*, 648 P.2d 1364 (Utah 1982). For a custodial parent, a "prima facie" case for abandonment may be established as indicated by the statute. *State, in Interest of J.R.T.*, 750 P.2d 1234, 1236–37 (Utah App.1988). Abandonment by either a custodial or non-custodial parent may also be found where conduct on the part of the parent "implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." *In re J. Children*, 664 P.2d 1158, 1159 (Utah 1983) (quoting *Summers Children v. Wulffenstein* 560 P.2d 331, 334 (Utah 1977)). "Abandonment may be proven by either objective evidence of the parent's conduct or by the expressed, subjective intent of the parent." *J.C.O. v. Anderson*, 734 P.2d 458, 462 (Utah 1987).

The trial court's finding of abandonment in the instant case was based on three factors: (1) appellant's failure to adopt and complete DFS's treatment plan; (2) appellant's failure to contact the children for a period of eight months after the last custody hearing; and (3) appellant's failure to provide economic support to the children.

The trial court found that appellant "intentionally refused to sign the [treatment] plan" since he believed DFS "did not have the right to interfere." Compliance or noncompliance with a treatment plan is certainly a valid consideration in determining custody of dependent children. However, noncompliance with a treatment plan, without more, cannot be the basis for permanently terminating parental rights.

The trial court found that the effect of appellant's refusal to accept DFS's treatment plan was a failure to communicate with his children. Appellant concedes he did not contact the children for eight months after the custody hearing in September 1986. He claims he was never told where his children were living and was frustrated at having to go through DFS to contact them. It is undisputed that he was planning to exercise his visitation rights in the summer of 1987 just as he had done in 1986.[4] There is also evidence in the record that throughout 1987 he told friends, neighbors, and coworkers of his ongoing struggle to gain custody of his children. Under those circumstances, his failure to communicate with the children for eight months was not clear and convincing evidence of abandonment.

The trial court also found that the $50 per month appellant was paying on past due child support was an "insignificant amount" in view of his income. Although

---

3. Subsections (a) and (c) of the statute do not apply in view of the court's ruling that deficiencies in appellant's parenting skills did not rise to the level of abuse or neglect. Subsection (d) of the statute cannot apply because appellant's failure to communicate with the children was for a period of less than one year.

4. At the hearing on July 6, 1987, the court ordered appellant's rights terminated—"effective immediately, because it may be that [appellant] has some summer plans for the children." At the hearing on appellant's petition for rehearing, appellant explained he had scheduled his summer vacation from mid-July through Labor Day so he could exercise his visitation rights with T.E. and B.E.

appellant was not paying anything toward current support, the fact he was paying something is further evidence he had a continuing interest in his children.

Based on the evidence presented, the trial court's finding of abandonment is clearly erroneous. The judgment permanently terminating his parental rights is, therefore, reversed. The case is remanded for further proceedings on the question of custody of T.E. and B.E. Costs to appellant.

BILLINGS and ORME, JJ., concur.