**STATE of Utah, in the Interest of M.W.H., a person under the age of eighteen years,**

v.

**Rudolfo AGUILAR, Appellant.**

**No. 890370–CA.**

Court of Appeals of Utah.

June 19, 1990.

Kim Rilling, David S. Dillon, Rilling & Associates, Salt Lake City, for appellant.

Ann L. Wassermann, Littlefield and Peterson, Salt Lake City, for appellees.

Jane A. Marquardt, Marquardt, Hasenyager & Custen, Ogden, Guardian Ad Litem.

Before BENCH, GREENWOOD and LARSON,[1] JJ.

## OPINION

BENCH, Judge:

Rudolfo Aguilar appeals from an order of the juvenile court permanently terminating his parental rights in M.W.H., his biological son.

M.W.H. was born out-of-wedlock in Salt Lake City, Utah, on August 25, 1984. Two days later, his mother relinquished her parental rights and M.W.H.'s foster parents (appellees) filed a petition for his adoption. On August 29, Aguilar registered a notice of his claim of paternity. Because the petition for adoption was filed before Aguilar's registration, any parental rights Aguilar had in M.W.H. were terminated. *See* Utah Code Ann. § 78-30-4(3) (1987). Aguilar challenged in court the statutory termination of his parental rights to his illegitimate son. In *In re Adoption of Baby Boy Doe*, 717 P.2d 686 (Utah 1986), the Utah Supreme Court held that Aguilar's parental rights had been terminated in violation of his rights to due process. The supreme court therefore reinstated Aguilar's parental rights in M.W.H.

After the supreme court's decision, appellees filed a petition seeking permanent custody of M.W.H. and termination of Aguilar's parental rights. Trial was held in August 1988. The juvenile court granted appellees' petition, terminating Aguilar's parental rights on three grounds: (1) he had abandoned M.W.H., as defined under Utah Code Ann. § 78-3a-48(1)(b) (1987); (2) his conduct was sufficiently detrimental to M.W.H. to permit the permanent termination of his parental rights based on unfitness, as defined under Utah Code Ann. § 78-3a-48(1)(a) (1987); and (3) termination was in the best interest of M.W.H.

Aguilar challenges the sufficiency of the evidence supporting the juvenile court's determinations of abandonment and unfitness. He also contends that his parental rights in M.W.H. were unconstitutionally terminated by the juvenile court's application of a "best interest of the child" standard.

Section 78-3a-48(1)(b) permits a court to terminate parental rights if it is determined that the parent has abandoned his or her child. The Utah Supreme Court has defined abandonment as "conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." *Summers Children v. Wulffenstein*, 560 P.2d 331, 334 (Utah 1977) (quoting *D.M. v. State*, 515 P.2d 1234, 1236-37 (Alaska 1973)). *Summers* adopted a two-pronged test for determining abandonment: first, did the parent's conduct evidence a conscious disregard for his or her parental obligations, and second, did that disregard lead to the destruction of the parent-child relationship? *Id.* "Abandonment may be proven by either objective evidence of the parent's conduct or by the expressed, subjective intent of the parent." *T.E. and B.E. v. S.E.*, 761 P.2d 956, 958 (Utah Ct.App.1988) (quoting *J.C.O. v. Anderson*, 734 P.2d 458, 462 (Utah 1987)).

In the case at hand, Aguilar has continually expressed the subjective intent to es-

---

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

tablish his parental rights and to gain custody of his son. Aguilar has appealed the termination of his parental rights in M.W.H. twice, this being the second time, and has expressed to others his desire to raise M.W.H. The juvenile court found no abandonment based upon Aguilar's subjective intent. The Utah Supreme Court, however, has stated that:

The subjective intent standard often focuses too much attention on the parent's wishful thoughts and hopes for the child and too little on the more important element of how well the parents have discharged their parental responsibility....

*Summers,* 560 P.2d at 334 (quoting *D.M.,* 515 P.2d at 1236–37). The juvenile court found that during the time that Aguilar was expressing his good intentions, he did nothing to fulfill his parental obligations or to foster a parent-child relationship.

■ The juvenile court thereupon determined that there had been objective abandonment. The court found that soon after his paternal rights had been reinstated by the Utah Supreme Court, Aguilar knowingly engaged in criminal conduct that resulted in his incarceration. Although criminal conduct in and of itself is not a sufficient ground on which to terminate parental rights, *see In re K.S.,* 737 P.2d 170 (Utah 1987), other evidence supports the juvenile court's finding that Aguilar consciously disregarded his obligations as a parent.

■ Aguilar failed to contact his son throughout M.W.H.'s first four years of life, even after Aguilar's parental rights were established when M.W.H. was eighteen months of age. We recognize, as did the juvenile court, that there was only a short period of time between the supreme court decision and Aguilar's incarceration in Wyoming in which he could have established a personal relationship with his son. Nevertheless, even after he was imprisoned, Aguilar sent no letters or cards, made no telephone calls, and made no attempt to contact M.W.H.[2]

Furthermore, between the time Aguilar's rights were reinstated and his apprehension, he refused to comply with requests by the juvenile court that would have expedited resolution of the adoption petition. His failure to submit to a blood test regarding paternity, his refusal to undergo a court-ordered psychological evaluation, and his refusal to provide the court with a current address demonstrated an intent to delay the proceedings designed to resolve the status of his parental rights.

We conclude that the court's finding that Aguilar's past conduct implied a conscious disregard for his obligation as a parent is not against the clear weight of the evidence. *See J.R.T. v. Timperly,* 750 P.2d 1234, 1236 (Utah Ct.App.1988).

■ The consideration of the child's best interests is encompassed by the second prong of the abandonment test, which looks to whether the parent's disregard of his parental obligations has led to the destruction of the parent-child relationship. *Id.* at 1238. If the destruction of the parent-child relationship has resulted from parental actions, "it is usually in the best interest of the child to terminate that relationship and allow the child an opportunity to establish a meaningful relationship with loving, responsible parents." *Id.*

In this case, the record supports the juvenile court's finding that the home in which M.W.H. currently lives provides a positive environment for him to grow and develop. The trial court found that, as a member of appellees' household since his birth, M.W.H. has become an integral part of their family. He has bonded to appellees' other three children, as well as to the parents, the only caretakers he has ever known. The juvenile court found that any disruption of the existing parent-child relationship would be devastating to M.W.H.'s emotional, psychological, and behavioral condition. The evidence therefore supports the juvenile court's decision that termi-

---

**2.** Despite Aguilar's oral assertions that he attempted to contact his son, there is no evidence in the record to support his claim.

nation of Aguilar's parental rights is in the best interest of M.W.H.[3] This conclusion necessarily fulfills the requirements of the second prong of the abandonment test, demonstrating that Aguilar's disregard for his parental duties led to the destruction of any parent-child relationship.

We affirm the portion of the juvenile court's judgment permanently terminating Aguilar's parental rights in M.W.H. based on objective abandonment. In view of our holding, we need not consider the issue of parental unfitness.

Affirmed.

GREENWOOD and LARSON, JJ., concur.

---

**3.** Although the termination of parental rights based solely on a child's best interests is unconstitutional, *see In re J.P.*, 648 P.2d 1364 (Utah 1982), "the best interest of the child remains a principal consideration in deciding whether to terminate parental rights." *J.R.T.*, 750 P.2d at 1238.