**In re J.D.M., A person under eighteen years of age.**

**Ivan and Martha BINGHAM, Plaintiffs and Appellees,**

v.

**Kelli Ann McARTHUR, Defendant and Appellant.**

No. 890557–CA.

Court of Appeals of Utah.

March 28, 1991.

A.W. Lauritzen (argued), Logan, for defendant-appellant.

Thomas L. Willmore (argued), Logan, for plaintiffs-appellees.

Before BENCH, JACKSON and RUSSON, JJ.

JACKSON, Judge:

Appellant appeals from a First District Juvenile Court's decision to permanently terminate her parental rights to her son, J.D.M. We affirm.

Appellant is the natural mother of three children, two of whom live with their fathers and are not subject to this appeal. The third, J.D.M., currently resides with appellees,[1] a married couple. J.D.M. was born on March 16, 1986 while appellant was incarcerated at the Utah State Prison. The father of J.D.M. was known to appellant only as "Steve" and his whereabouts are unknown. After J.D.M. was born, he resided with appellant's mother. When appellant was released from prison on July 14, 1987, she moved in with her mother, J.D.M., and her other two children. Appellant's mother was incarcerated shortly thereafter.

Appellant's parole was revoked on June 6, 1988, and appellant left J.D.M. with "Jody," a friend with whom appellant had become acquainted in prison. Prior to being paroled for a second time, appellant received a letter from appellees. In their letter, appellees stated that they were interested in taking care of J.D.M. for appellant while she was incarcerated. Appellant called appellees from prison and gave them permission to pick up J.D.M. from Jody's house. Appellant claims she later learned appellees had no intentions of returning J.D.M. to her. Appellant called Jody and asked her to retrieve J.D.M. from appellees' house. Appellees refused to release J.D.M. to Jody, saying that Jody's parole officer had told them not to. When appellant was released on parole on August 23, 1988 to a halfway house, she called appellees and told them to immediately return J.D.M. to her. Appellees refused to do so.

In October 1988, appellees petitioned the juvenile court to terminate appellant's parental rights as to J.D.M. The bases for this petition were abandonment and parental unfitness. J.D.M. had resided with appellees for three months. The only contacts between appellant and appellees from August 1988 to February 1989, when appellant's parole was revoked for a third time, were four or five phone calls. A hearing was held in February 1989 and a trial conducted in July 1989. The court entered its

findings of fact, conclusions of law, and an order permanently depriving appellant of her parental rights as to J.D.M.

On appeal, appellant raises the following issues: (1) Was there clear and convincing evidence to support the finding that appellant had abandoned J.D.M.? (2) Was there clear and convincing evidence to support the finding that appellant is an unfit parent? (3) Did the State meet its duty to provide adequate treatment to appellant? (4) Does appellant have a constitutional right to raise her own child, or at a minimum, to be evaluated regarding her unfitness?

## STANDARD OF REVIEW

▮▮   The decision of the trial court to terminate appellant's parental rights will be disturbed by this court only if the findings are clearly erroneous. *State in Interest of J.R.T. v. Timperly,* 750 P.2d 1234, 1236 (Utah Ct.App.1988); Utah R.Civ.P. 52(a). The burden on appellant is a heavy one in that she "must marshall the evidence in support of the findings and then demonstrate that despite this evidence, the [juvenile] court's findings are so lacking in support as to be against the clear weight of the evidence, thus making them clearly erroneous." *State in Interest of P.H. v. Harrison,* 783 P.2d 565, 566 n. 1 (Utah Ct.App.1989) (quoting *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989)) (citations omitted).

## TERMINATION OF PARENTAL RIGHTS

Utah Code Ann. § 78-3a-48 (Supp.1990) allows a court to decree a termination of all parental rights of one or both parents under certain enumerated circumstances. In the present case, appellant's parental rights to J.D.M. were terminated based on two findings: that she abandoned J.D.M., and that she is an unfit or incompetent parent.

---

**1.** The appellees describe themselves as relatives of appellant. One appellee is the step-sister of appellant's mother.

## A. Abandonment

■ In *Summers Children v. Wulffenstein*, 560 P.2d 331 (Utah 1977), the Utah Supreme Court defined abandonment as "conduct on the part of the parent which implies *a conscious disregard of the obligations owed by a parent to the child*, leading to the *destruction of the parent-child relationship.*" *Id.* at 334 (emphasis added) (citations omitted). This two-pronged test is supplemented by Utah Code Ann. § 78–3a–48(1)(b) (Supp.1990), which outlines one method of establishing a prima facie case of abandonment: "the parent or parents, although having legal custody of the child, have surrendered physical custody of the child, and for a period of six months following the surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child." *Id.; see also J.C.O. v. Anderson*, 734 P.2d 458, 462 (Utah 1987).

The juvenile court found that the evidence presented did not establish a prima facie case of abandonment under the statute. Appellant had made numerous contacts with appellees between the time that J.D.M. was placed with appellees and the filing of the petition. Thus the requisite six-month period was not met. The court went on to find, however, that under the two-pronged test enunciated in *Wulffenstein*, abandonment had been established: "[Based on a pattern of] no contact, nor support, nor nurturing, nor parenting, nor caring ..., [there] is evidence that [appellant] abandoned this child."

From the time the petition was filed in October 1988 to the date of the hearing on July 5, 1989, appellant had sent no cards, letters or holiday presents to J.D.M., or · otherwise tried to communicate with him. The court was initially concerned that appellant may have believed she had no legal right to visit J.D.M. after the termination

petition was filed. But the court eventually concluded "these concerns were substantially reduced in magnitude through the testimony of [appellant] in that she because of her other concerns and worries and troubles that were self imposed on her by reason of her conduct, stated that she just did not contact the child because of her own problems." The trial court thus concluded appellant had demonstrated a "conscious disregard for parental obligations."

As to a "destruction of the parent-child relationship," the court found that while appellant was home with J.D.M. following her release from prison in July 1987, J.D.M. had been placed in an environment of instability, abuse and habitual drug abuse.[2] The trial court made no other findings which specifically addressed the relationship between appellant and J.D.M. Our review of the record, however, indicates that other evidence addressing this question was presented. For example, appellant testified she did not contact J.D.M. because he would not know who she was. Appellees testified J.D.M. has not cried or otherwise indicated that he misses appellant. Other witnesses testified J.D.M. has not asked about his mother or his siblings in over a year. Appellant's only attempt to rebut this evidence is a statement that any destruction in her relationship with J.D.M. should be blamed on appellees. Because appellant has not convinced us that these findings are against the clear weight of the evidence, we affirm the trial court's finding of abandonment.

## B. Unfit or Incompetent to Parent

Because we can affirm the juvenile court's finding that grounds exist for terminating appellant's parental rights based on abandonment, it is unnecessary to address the alternative ground of parental unfitness. *See, e.g., State in Interest of M.W.H. v. Aguilar*, 794 P.2d 27, 30 (Utah Ct.App.1990).

---

**2.** These are certainly valid considerations in an action for termination of parental rights, but without more cannot be the basis for permanently terminating those rights. *See, e.g., State in Interest of M.W.H. v. Aguilar*, 794 P.2d 27, 29 (Utah Ct.App.1990) (criminal conduct in and of itself not sufficient ground on which to terminate parental rights); *State in Interest of T.E. v. S.E.*, 761 P.2d 956, 958 (Utah Ct.App.1988) (finding that father did not comply with treatment plan insufficient, by itself, to terminate parental rights).

## THE STATE'S DUTY TO ASSIST

■ Appellant next contends that there is a constitutionally based precondition of termination, that the State must provide treatment and assistance to the parent. Because appellant received no notice from the State that her parenting was inadequate, nor did she receive any treatment, appellant argues that her rights cannot be terminated.[3]

■ This requirement of notice and efforts at remedial action prior to commencement of parental rights termination proceedings applies only to more "exotic" forms of abuse or neglect, and not to consistent patterns of obvious physical abuse and neglect. *State in Interest of M.A.V. v. Vargas,* 736 P.2d 1031, 1034 (Utah Ct.App. 1987). The State has a duty to notify a parent of his or her deficiencies and to assist in rehabilitation *only* in cases where it is determined the parent may not have control of the circumstances. *State in Interest of P.H. v. Harrison,* 783 P.2d 565, 570 (Utah Ct.App.1989); *State in Interest of J.R.T.,* 750 P.2d 1234, 1237–38 (Utah Ct.App.1988); *J.C.O. v. Anderson,* 734 P.2d 458, 463 (Utah 1987). "[I]n cases involving circumstances over which the parent has control, *such as abandonment* or physical abuse, the state does not have a comparable duty to assist." *J.R.T.,* 750 P.2d at 1237 (emphasis added).

**3.** Appellant incorrectly places total reliance on *State v. Lance,* 23 Utah 2d 407, 464 P.2d 395 (1970), and *In re Walter B.,* 577 P.2d 119 (Utah 1978), for this proposition. In *Lance* and in *Walter B.,* the Utah Supreme Court stated that certain species of neglect involve subtle psychological factors, and that therefore justice required informing a parent of the condition. *Lance,* 464 P.2d at 399; *Walter B.,* 577 P.2d at 124. However, that language has since been repudiated. *See, e.g., J.C.O. v. Anderson,* 734 P.2d 458, 463 (Utah 1987); *J.R.T.,* 750 P.2d at 1237 n. 2. Counsel for appellant should have discovered that the language relied on was dicta, in that several cases decided subsequent to *Lance* and *Walter B.* emphasize this point.

**4.** Appellees submit that because this is a private petition and not a petition filed by the State, no duty to provide assistance can exist. We find no support in prior case law, that, because a petition for termination of parental rights is brought by a private party, the natural parent has fewer rights to rehabilitation efforts, treatment, or notice. Appellees' brief suggests that

■ In this case, the petition for termination of appellant's rights alleged, and the juvenile court found, that appellant had abandoned J.D.M., and that she was an unfit parent. Our affirmance of the finding regarding abandonment precludes a determination that the State was required to provide assistance to appellant. *See J.R.T.,* 750 P.2d at 1238 (no allegation of parental unfitness in a petition based on abandonment, therefore no State duty to assist or rehabilitate parent is required).[4]

## CONSTITUTIONAL RIGHT TO RAISE CHILD

■ Appellant's last issue on appeal concerns her constitutional right to raise J.D.M. There is no dispute that the parent-child relationship is accorded constitutional protection. *In re K.S.,* 737 P.2d 170, 172 (Utah 1987); *In re J.P.,* 648 P.2d 1364, 1377 (Utah 1982); *State in Interest of C.Y. v. Yates,* 765 P.2d 251, 255 (Utah Ct.App. 1988). There is a strong presumption that children are better off with their natural parents than with a foster or adoptive family. *See In re Castillo,* 632 P.2d 855, 856–57 (Utah 1981). This is why the due process clause requires clear and convincing evidence before a parent's rights may be terminated.[5] *See, e.g., J.P.,* 648 P.2d at

somehow, a natural parent under these circumstances is more at fault for her actions, than is a natural parent in a case where the State has filed the petition.

At present, any person can file a petition to terminate the rights of a parent. *See generally In Interest of D.M.,* 790 P.2d 562, 565 (Utah Ct.App.1990) ("The juvenile courts of this state have entertained petitions by all sorts of persons where the care, guidance, and control of a child were brought before the court."). Although appropriate in this case, the method pursued by appellees is not to be construed as appropriate, or even as an acceptable method in every case.

**5.** In the typical scenario, before termination proceedings are instituted, the State through the Division of Family Services (DFS) will usually have had a long history of interaction with the natural family. This provides the juvenile court with ample evidence on which to base its decision regarding termination of a parent's rights. In any case, diligent efforts should be made to collect evidence from a variety of sources, espe-

1377. However, these rights of a parent must coexist with the rights of children. The rights of parents whose conduct evidences a conscious disregard for parental obligations, and who therefore have destroyed any meaningful parent-child relationship, must give way to the principle that the best interests[6] of the child are paramount in determining whether to terminate parental rights.

## CONCLUSION

We affirm the court's decision to terminate appellant's parental rights.

BENCH and RUSSON, JJ., concur.

cially from persons who will not be affected by the outcome of the proceedings. For example, the court could invite DFS to examine the natural parents, or seek an independent evaluation. Input from a guardian ad litem is also appropriate. In this case, a guardian ad litem was appointed. She recommended termination of appellant's rights to the court solely on the basis that "J.D.M. has developed well in appellee's home." This recommendation was incorporated into the court's findings of fact. The guardian ad litem testified she attempted to contact appellant, but that her attempts were unsuccessful. Therefore, the guardian ad litem never met appellant, and could not provide any input as to J.D.M.'s natural home. We are concerned that her recommendation was apparently given much weight by the juvenile court, despite its one-sided nature.

In sum, we caution juvenile courts to ensure that the parties are well represented and afforded an opportunity to fully inform the court.

6. While a total reliance on the best interests of the child in these cases is unconstitutional, *see, e.g., J.P.,* 648 P.2d at 1377, the child's best interests remain a principal consideration in deciding whether to terminate parental rights. *State in Interest of J.R.T. v. Timperly,* 750 P.2d 1234, 1238 (Utah Ct.App.1988). This best interests consideration is encompassed by the second prong of the abandonment test. "If the parent-child relationship has been destroyed by the parent's conduct, or lack of conduct, it is usually in the best interest of the child to terminate that relationship and allow the child an opportunity to establish a meaningful relationship with loving, responsible parents." *Id.*