**STATE of Utah in the Interest of: OR-GILL, Evan Leonard (04–08–67) Orgill, Bart Wells (01–04–71) Persons under 18 years of age.**

**Appeal of Joyce THOMASON.**

**No. 17456.**

Supreme Court of Utah.

Sept. 22, 1981.

---

H. Don Sharp, Ogden, for appellant.

Robert L. Neeley, Ogden, for respondent.

HOWE, Justice:

This is an appeal from a decree entered by the juvenile court terminating the parental rights of the appellant to her minor children E. and B. because she had abandoned them and because she was unfit by reason of her conduct and emotional condition which was seriously detrimental to them.

This case is before us for the second time. In the first appeal entitled State, in the Interest of E. and B. v. J. T., Utah, 578 P.2d 831 (1978), we reversed a decree of the juvenile court terminating the parental rights of the appellant because the evidence failed to establish that she was unfit or incompetent, and also failed to establish that she had abandoned the children. The reader is referred to our opinion in that case for the factual background of this entire problem.

Following our reversal of that decree, the appellant filed with the juvenile court a petition to have custody of the two children restored to her. She was then living in Denver, Colorado. Shortly thereafter, she received a letter from the Colorado Department of Social Services which had attached to it a letter from Clara McNeil of the Utah Division of Family Services stating the concerns of the Utah Division in regard to appellant's re-establishment of contact with her children. She was informed that if she had any questions about the contents of the letter she should contact Mrs. Jean Tuttle of the Colorado Department. Appellant took no action to secure the help of Mrs. Tuttle in the re-establishment of contact with the children. When she was asked why she did not call Mrs. Tuttle, she responded that she simply decided not to do so because the "damage had been done" in her relationship with the children.

A hearing was held on appellant's petition for restoration of custody on January 10 and 11, 1979. Although she knew about the hearing, she did not appear either in person or by counsel. She later testified that she felt at the time it was best for the children to stay with the foster parents with whom they had been living since 1974. Her petition for restoration of custody was dismissed and she was advised that custody and guardianship of the children had been placed with the foster parents. She thereafter made no effort to contact the children, the court, or anyone to establish visitation with them.

Over a year later, on February 13, 1980, the foster parents instituted this action for permanent deprivation of appellant's parental rights to the children. Appellant ap-

peared and resisted. At the conclusion of the hearing on that petition the court terminated her rights to the children on the ground that she had consciously abandoned them, and that she was unfit because her conduct and emotional condition had created a situation seriously detrimental to them.

The appellant assails the findings of the juvenile court on the ground that they are not supported by the evidence. We shall first consider whether the evidence supports the finding of abandonment by the appellant. Section 78–3a–48(b) provides respecting abandonment that:

It shall be prima facie evidence of abandonment that the parent or parents, although having legal custody of the child, have surrendered physical custody of the child, and for a period of six months following such surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child; . . .

Both parties to this appeal agree with the following statement concerning abandonment which was made by this Court in State, in the *Interest of Summers' Children v. Wulffenstein*, Utah, 560 P.2d 331 (1977):

. . . the test for abandonment is whether there is conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child leading to the destruction of the parent-child relationship. The test focuses on two questions, has the parent's conduct evidenced a disregard for his parental obligations, and has that disregard led to the destruction of the parent-child relationship?

The appellant testified that after she prevailed on her first appeal, she made no request for visits with the children although a social worker in the Utah Division thought that she made two requests for visits between May 1978 and January 1979. She deliberately did not follow through with her petition for restoration of custody because she thought it was best for the children to stay with the foster parents as she had had no relationship with the children. She now asserts that she was frustrated in her efforts to obtain visitation through the Utah Division because it kept placing barriers in her path. While this was found to be true in the prior appeal before this Court, there is no evidence to support that contention in this appeal. It appears that her failure to contact the children and to pursue her petition to regain their custody was intentional on her part.

■ We believe that after our reversal in the first appeal, if she wanted to re-establish a relationship with the children, it was incumbent upon her to display some initiative. They had then been separated for four years. Instead, her efforts were minimal consisting mainly of two letters she wrote to Clara McNeil in the Division inquiring about the well-being of her children and as to whether she had given them the presents she sent them at Christmas 1977. While it may be true as she asserts that the Division did little or nothing to reunite her with her children, even refusing to deliver her presents, she cannot shift all of the blame to the Division. She knew from her first appeal where it stood on her case. There was an obligation on her to vigorously pursue the fruits of her first appeal. When she did not do so and allowed another two and one-half years to expire, the children and foster parents grew closer and the memory of their mother faded in the minds of the children. The children have not lived with her since February 1974, and she has not visited them since June of that year. The long years of separation have taken their toll and erased the parent-child relationship between them.

She also seeks to excuse her complacency because of problems she had with her former attorney which led to his withdrawing as her counsel. We believe that here again ordinary effort on her part could have quickly solved that problem and new counsel could have been obtained. We conclude that the evidence supports the finding of abandonment by appellant.

■ The evidence also supports the juvenile court's finding that appellant was unfit by reason of her conduct and emotional condition which was seriously detrimental to the children. Dr. Janice Sargent, a psychologist, testified that based on appellant's psychological evaluation, she is ambivalent toward the children in that at one time she expresses love and concern for them, but later expresses opposite feelings which are detrimental for the children.

Appellant next contends that the court erred in not granting her motion in the juvenile court to disqualify and remove the guardian ad litem which it had previously appointed, and to appoint a successor to him. Sometime prior to the first appeal of this case the juvenile court had appointed a guardian ad litem for the children pursuant to § 78–3a–28, which authorizes the court to appoint a guardian ad litem to protect the "interest of the child." Appellant's motion to disqualify the guardian ad litem was based on the fact that he had been actively involved in the first hearing to terminate the appellant's parental rights, and in the appeal to this Court which followed. Appellant charges that the information which he accumulated in the first proceeding and the stance which he took there rendered him incapable of forming an effective, independent determination of the best interests of the two children. She points out that the guardian ad litem served in that capacity in all proceedings leading up to the reversal by this Court in 1978. In those prior proceedings he was intimately associated with counsel for the foster parents and joined counsel in the filing of a petition for re-hearing. They submitted jointly a brief in support of that petition. By doing so, it is charged, his views became indistinguishable from those of the foster parents. Her argument continues that the guardian ad litem must have felt that our decision on the first appeal was erroneous and it would be impossible for him to change his mind thereafter and to make an independent determination as to what constituted the best interests of the children.

■ Our statute is silent as to the role to be played by the guardian ad litem other than that he is to "protect the interest of the child." If he is to do that he then must be active in seeking information and evidence, and based thereon arrive at a conclusion as to what course will best serve the children. In fulfilling this role he is not required to remain neutral between the two positions taken by the parties. We find nothing in the record which leads us to believe that the guardian ad litem here acted improperly. The fact that he now advocates that the best interests of the children would be served by the termination of the parental rights of the appellant does not prove otherwise, even though this Court disagreed with him in the first appeal. As we have pointed out above, the evidence now justifies the termination of the appellant's parental rights which is the position the guardian ad litem has consistently taken. The record reflects that he has dealt fairly and courteously with the appellant and endeavored to keep her fully apprised of the progress of the case. We find no abuse of discretion on the part of the juvenile court in denying the appellant's motion.

Lastly, the appellant contends that the juvenile court should have decided the case based on an amendment which was made to § 78–3a–48 by the 1980 Legislature and which was in effect on August 18, 1980 when the hearing below was held. The juvenile court declined to do so, and instead followed the former law which was in effect in February 1980 when the petition for deprivation of appellant's custody was filed. Under the former law if a parent was found to be "unfit or incompetent by reason of conduct or condition seriously detrimental to the child," a termination could be ordered. But under the 1980 amendment that language was deleted and it was provided that parental termination may be decreed if the court finds that such termination will be in the "child's best interest," listing three criteria to guide the court in determining the best interest of the child. Appellant argues that the approach of the amended statute is more definite, practical and equitable and that parents who desire

to preserve their parental rights have a better chance to defend themselves.

■ Assuming, without deciding, that the juvenile court should have applied the law as expressed in the 1980 amendment, its decree would not have been different. One of its findings of fact was that "It is in the best interest of the children that the parental rights of the natural mother be terminated." The record is replete with testimony that because of the emotional problems of the appellant, her rejection of the children and the elapse of over six years in seeing them, they have made a new life with the foster parents, that they are happy there and that it would be detrimental to them to disrupt their lives by returning them to the appellant's custody. Furthermore, as has been mentioned in this opinion, the court's decree was also based on the ground that the appellant had abandoned the children and the 1980 Legislature made no change in that part of the law whatever.

In affirming the decree of the juvenile court we reiterate an observation made in *State v. Dade*, 14 Utah 2d 47, 376 P.2d 948 (1962), "that the cutting of family ties is a step of the utmost gravity which should be done only for the most compelling reasons" but "quite beyond and more important than the rights and privileges of the parents is the welfare of these children and their prospects for becoming well-adjusted, self sustaining individuals." Those words seem especially appropriate here.

The decree below is affirmed.

HALL, C. J., STEWART and OAKS, JJ., and CROCKETT, Retired Justice, concur.

MAUGHAN, J., did not participate herein.

CROCKETT, Retired Justice, sat.