STATE of Utah, in the Interest of R.A.F.,

K.F.W., Plaintiff and Appellee,

v.

R.C.F., Defendant and Appellant.

No. 920456–CA.

Court of Appeals of Utah.

Nov. 16, 1993.

---

John Walsh (Argued), Salt Lake City, for defendant and appellant.

Larry R. Keller (Argued), Larry R. Keller & Associates, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant challenges the trial court's order terminating his parental rights to his child, R.A.F. We affirm.

## FACTS

In 1985, plaintiff and defendant began living together as husband and wife. R.A.F. was born to the parties in September 1986. The parties separated several times before their final separation in September 1987. In November 1987, the marriage was annulled and plaintiff was awarded custody of the child.

In January 1990, plaintiff filed a petition to terminate defendant's parental rights and a motion to transfer the case from district court to juvenile court. The transfer was granted and the juvenile court heard the petition. The juvenile court terminated defendant's parental rights to the child, finding that defendant's conduct constituted abandonment under Utah Code Ann. § 78-3a-48(1)(b) (1992).[1] Defendant

---

1. This statute was repealed effective July 1, 1992. *See* Utah Code Ann. § 78-3f-107 (Supp. 1993). Under the 1992 version, which was in effect during the relevant period for this case, there were four grounds for terminating parental rights: (a) unfitness; (b) abandonment; (c) neglect; and (d) lack of communication for one year. Our analysis focuses exclusively on abandonment.

appealed the ruling to this court, which remanded the case and instructed the juvenile court to make more detailed findings in determining whether defendant had abandoned the child. *Woodward v. Fazzio*, 823 P.2d 474, 478–79 (Utah App.1991). Accordingly, the juvenile court made over forty additional findings relevant to defendant's abandonment, and thereafter, reinstituted its termination order. Defendant again appeals the juvenile court's ruling.

## STANDARDS OF REVIEW

 On appeal, defendant challenges both the trial court's factual findings and its determination of abandonment. To successfully challenge a factual finding, defendant must (1) marshal all of the evidence that supports the finding, and (2) demonstrate that, despite the evidence, the finding is so lacking in support as to be "against the clear weight of evidence" and thus, clearly erroneous. *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989). To successfully challenge the juvenile court's determination of abandonment under section 78–3a–48(1)(b), defendant must demonstrate that the trial court abused its discretion. *State ex rel. J.R.T. v. Timperly*, 750 P.2d 1234, 1236 (Utah App.1988) (citation omitted).

## ANALYSIS

### Factual Findings

 Defendant challenges several of the juvenile court's factual findings. The juvenile court found that defendant saw the child only four or five times from September 1987 to September 1988 and not at all from September 1988 through January 1990, when the termination petition was filed. Defendant marshals support for this finding from plaintiff's testimony. Defendant then cites his own testimony and his mother's testimony to indicate that he visited the child nearly every weekend. However, the juvenile court found that defen-

dant's and his mother's testimonies were unreliable. The trial court is in a better position to observe factors bearing on credibility and we will not disturb a factual assessment unless it clearly appears that the trial court was in error. *Reliance Ins. Co. v. Utah Dep't of Transp.*, 858 P.2d 1363, 1367 (Utah 1993). Here, the juvenile court believed plaintiff rather than defendant and his mother. Therefore, although there is evidence to support both sides of the argument, this finding is not clearly erroneous.

 In addition, defendant challenges the juvenile court's findings that he failed to pay child support. Defendant's challenge to the juvenile court's findings about his payment of child support is tenuous, at best. The record is replete with evidence that defendant has not paid child support. The only evidence defendant cites supporting his claim that he had paid child support is his own testimony that he cashed some checks to give to plaintiff. Therefore, the juvenile court's findings about defendant's payment of child support are not clearly erroneous.[2]

 Defendant next challenges the juvenile court's finding about gifts to the child. The juvenile court found:

> [Defendant's mother] did testify that some toys were purchased for the child by [defendant], but in light of the fact she testified her son did not pay child support because he had been unemployed and his earnings were low, her testimony was unreliable and the Court believes it was the paternal grandparents who were thoughtful enough to purchase the few toys in question for R.A.F.

Defendant claims that his and his mother's testimonies demonstrate that he bought the child walkie-talkies, two play trucks, puzzles, books, and clothing as gifts. As stated in the finding, the juvenile court did not believe defendant's and his mother's testimonies and found that these gifts were probably purchased by defendant's par-

---

**2.** The juvenile court found that defendant's parents made nine payments, of which three were reimbursed by defendant. However, such payments are not relevant to our analysis since

these payments were submitted after the termination petition had been filed on January 26, 1990.

ents. The juvenile court relied on plaintiff's testimony that defendant did not provide the child with gifts. Although the support for this finding is not as comprehensive as some of the other findings, it is not so lacking as to be against the clear weight of the evidence. *See id.* Therefore, this finding is not clearly erroneous.

Defendant further claims that the findings that he disregarded his parental obligations are clearly erroneous. Although defendant does not directly attack the relevant findings, he does cite evidence indicating that he has not disregarded his parental obligations. Specifically, defendant's parents testified that defendant changed the child's diapers, fed and bathed the child, and played with the child. Defendant's co-worker also testified that he saw defendant change the child's diaper. Although defendant and his co-worker's testimonies support defendant's argument, the evidence to support the trial court's finding is not so lacking as to be against the clear weight of the evidence. *See id.* Therefore, the findings that defendant disregarded his parental obligations are not clearly erroneous.

Defendant challenged several other factual findings of the juvenile court, but such challenges were insufficient because he did not properly marshal the evidence. *See Doelle,* 784 P.2d at 1178. Since none of the juvenile court's findings are clearly erroneous, we accept them as correct for purposes of determining abandonment.

### Abandonment

Defendant also challenges the juvenile court's determination of abandonment under Utah Code Ann. § 78–3a–48(1)(b) (1992). In the previous appeal of this matter, this court instructed the juvenile court to make more detailed findings in determining whether defendant had abandoned the child. On remand, the juvenile court made over forty additional findings to address this court's instruction. With the juvenile court's additional findings, we can determine whether the juvenile court abused its discretion in ruling that defendant had

abandoned the child under section 78–3a–48(1)(b).

Section 78–3a–48(1)(b) provided that a trial court may terminate parental rights if the court finds "that the parent ... [has] abandoned the child." Utah courts have interpreted this statute to include a two-part test for determining abandonment: (1) whether the parent's conduct evidenced a conscious disregard for his parental obligations; and (2) whether that disregard led to the destruction of the parent-child relationship. *State ex rel. Summers Children v. Wulffenstein,* 560 P.2d 331, 334 (Utah 1977). Using this test, the *Wulffenstein* court found abandonment based on the fact that the father had visited his two children only twice over a two-year period. *Id.*

Similarly, in *In re J. Children,* 664 P.2d 1158, 1159 (Utah 1983), the juvenile court based its finding of abandonment on the fact that the mother had not paid child support and had visited the children only four or five times over three and one-half years. The juvenile court found that "[t]he natural mother has shown no interest in the welfare of the children. A parent/child relationship does not exist." *Id.* at 1160.

Several other Utah cases have found abandonment based solely on a parent's lack of visitation and communication. *See, e.g., In re Guzman,* 586 P.2d 418, 419 (Utah 1978) (abandonment found based on parent's failure to exercise visitation rights and communicate with children over four years); *State ex rel. M.W.H. v. Aguilar,* 794 P.2d 27, 29 (Utah App.1990) (parent's failure to contact child during first four years of child's life constituted abandonment); *Timperly,* 750 P.2d at 1236–37 (parent's unexcusable failure to contact child in any manner for over a year constituted abandonment).

To apply the *Wulffenstein* test in the present case, we must briefly summarize the juvenile court's most crucial findings. Defendant visited the child only four or five times during a period of over two years. Defendant did not write any letters or make any telephone calls to the child during this time period. Plaintiff made significant efforts to allow defendant to exercise his visitation rights, including reg-

ularly transporting the child to the home of defendant's parents for more than one year.[3] Defendant went to great lengths to avoid paying child support and was severely negligent in his payments, owing some $3,000 in back child support at the time of the trial.

Based upon these findings, we conclude that the juvenile court did not abuse its discretion in ruling that defendant's conduct evidenced a conscious disregard for his obligations as a parent, and that that disregard led to the destruction of the parent-child relationship. *See Timperly*, 750 P.2d at 1236–37.

## CONCLUSION

The juvenile court's factual findings are not clearly erroneous. These findings support the juvenile court's determination that defendant abandoned the child under the *Wulffenstein* test, and thus, the juvenile court did not abuse its discretion. We therefore affirm the juvenile court's termination of defendant's parental rights of R.A.F.

BILLINGS, J., concurs.

ORME, J., concurs in the result.

3. Although the child received regular visits from defendant's parents, the juvenile court found that defendant was not present during these visits. Even though defendant's parental rights were terminated, our action today in no way affects the rights of defendant's parents.