**STATE in the Interest of G.V., G.V., D.M., D.M., and M.V., persons under eighteen years of age.**

**D.V., R.M., and G.V., Appellants,**

v.

**STATE of Utah, Appellee.**

**No. 960018–CA.**

Court of Appeals of Utah.

May 2, 1996.

---

Russell G. Evans, Laherty & Associates, Salt Lake City, for Appellant D.V.

Candice Ragsdale–Pollock, Salt Lake City, for Appellant R.M.

Jan Graham, Utah Attorney General, Carol L.C. Verdoia, Assistant Attorney General, Salt Lake City, for Appellee.

Elizabeth M. Knight, Salt Lake City, Guardian Ad Litem.

Before BENCH, GREENWOOD, and WILKINS, JJ.

OPINION

PER CURIAM:

This matter is before the court on its own motion for summary disposition. The appeal arises from the juvenile court's termination of the parental rights of R.M., the father of D.M. and D.M. and of D.V., the mother of all five of the children.[1]

D.V. contends that the trial court improperly relied upon an invalid psychological evaluation in concluding that she was an unfit parent. R.M. argues that he had a relationship with his children; that the juvenile court applied the wrong test and abused its discretion in determining that he had abandoned his children; and that the trial court improperly applied the best interests test.

The State and the Guardian Ad Litem (Guardian) contend, even disregarding the psychological evidence, that sufficient evidence existed for the trial court to conclude that D.V. was an unfit mother. They further contend that the evidence supports the trial court's conclusions that R.M. abandoned his children. We agree.

■ To successfully challenge a factual finding, appellants must marshal all evidence supporting the finding and then "demonstrate that, despite the evidence, the finding is so lacking in support as to be 'against the clear weight of the evidence' and, thus, clearly erroneous." *State in Interest of R.A.F.,* 863 P.2d 1331, 1333 (Utah App.1993) (citing *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989)). To successfully challenge the juvenile court's determination of abandonment under Utah Code Ann. § 78–3a–48(1)(b) (Supp.1994), the natural parent must demonstrate that the trial court abused its discretion. 863 P.2d at 1333.

■ We reject D.V.'s contention that the juvenile court placed undue weight on the psychological evidence in determining that she was an unfit mother. In paragraph 35 of the findings of fact, the juvenile court reviewed the testimony of three witnesses: the

State's witness, Todd Corelli, who had examined D.V. and concluded that she had certain psychological problems that negatively affected her ability to parent; D.V.'s witness, Dr. Carol Ballou, who attempted to refute Mr. Corelli's methodology and conclusions; and the State's rebuttal witness, Dr. Mercedes Reisinger–Marshall, who supported Mr. Corelli's methodology and conclusions. The juvenile court judge stated that, although there were certain conflicts in the expert testimony, Mr. Corelli's methodology and report were reliable. The judge went on to say "that Mr. Corelli's conclusion that [D.V.'s] psychological disorders leave her unable to parent adequately is a correct one." Having reviewed the record, we see no reason to disturb these conclusions. It is the role of the juvenile court, not this court, to assess the weight and credibility of expert witnesses and to choose among their testimonies. *Yelderman v. Yelderman,* 669 P.2d 406, 408 (Utah 1983) (per curiam); *Canning v. Canning,* 744 P.2d 325, 329 (Utah App. 1987).

■ Moreover, the finding concerning D.V.'s psychological make-up was just one of many findings supporting the juvenile court's conclusion that D.V. is an unfit parent. The other findings, which D.V. does not challenge, lend further support to this determination. Social workers and Division of Family Services personnel testified that the children were dirty and unkept, were not fed regularly, did not attend school regularly, and were subjected to filthy living conditions. They further testified that D.V. was not able to provide a stable place for the children to live, was not able to financially support the children, and allowed G.V. to be around the children (and, in fact, remarried him) in violation of a court order.[2] Thus, even without the psychological evaluation and paragraph 35 of the findings of fact, there was sufficient evidence to support the juvenile court's decision to terminate D.V.'s parental rights.

■ We likewise reject R.M.'s claims. As R.M. points out, Utah courts are required to

1. G.V., the father of G.V., G.V., and M.V. did not file an appeal and, thus, we need not address the appropriateness of the termination of his parental rights.

2. G.V. had inappropriately touched one of the children and had been ordered not to have contact with them until he had undergone treatment.

apply the following two-part test in determining if a child has been abandoned: (1) whether the parent's conduct evidenced a conscious disregard for his/her parental obligations; and (2) whether that disregard led to the destruction of the parent-child relationship. *State in Interest of R.A.F.*, 863 P.2d at 1334. In applying this test, Utah courts have found that evidence of a parent's failure to regularly visit his/her children, failure to write letters or make phone calls, and failure to pay support is sufficient to meet both prongs of the abandonment test. *Id.* at 1334–35; *see also* Utah Code Ann. § 78–3a–408(1)(b) (1995) (declaring that it is prima facie evidence of abandonment for parent to "have failed to communicate with the child by mail, telephone, or otherwise for six months or failed to have shown the normal interest of a natural parent, without just cause").

 Although R.M. claims to have been sufficiently involved in the lives of D.M. and D.M., the evidence is to the contrary. R.M. himself testified that he had no contact with his children for over six months prior to the filing of the termination petition. The juvenile court found that before that, R.M.'s involvement with his children had been sporadic at best. Moreover, his efforts to see his children were haphazard and infrequent, and the support he has provided has been grossly insufficient. R.M. has not sent cards or letters to his children, has not given them any gifts or other remembrances, and does not even know their birth dates. Based upon this evidence, the juvenile court properly determined that R.M. had abandoned his children. The juvenile court stated, in making its determination of abandonment, that if it "were to consider whether [R.M.'s] disregard of his [children] led to the destruction of the parent[-]child relationship, the Court would conclude that by his total lack of contact[, R.M.] never created enough of a parent-child relationship to destroy it through the disregard he had evidenced." This conclusion is also supported by the evidence.

In summary, the juvenile court's factual findings are supported by the evidence and are not clearly erroneous. The juvenile court did not unduly rely upon the psychological evidence and, in fact, the finding concerning D.V.'s mental health was one of many findings supporting the juvenile court's conclusion that D.V. was an unfit mother. The evidence also supports the juvenile court's determination that, under the two-pronged test, R.M. abandoned his children. Thus, the court did not abuse its discretion.

Accordingly, we affirm the juvenile court's termination of D.V.'s and R.M.'s parental rights.

BENCH, GREENWOOD and WILKINS, JJ., concur.