**In the Matter of the ADOPTION OF B.O., a minor.**

**P.O., Appellant,**

**v.**

**S.G. and C.G., Appellees.**

**No. 960010–CA.**

Court of Appeals of Utah.

Oct. 31, 1996.

Russell Y. Minas, Salt Lake City, for Appellant.

Ronald C. Wolthuis, Salt Lake City, for Appellees.

Before DAVIS, Associate P.J., and BILLINGS and WILKINS, JJ.

## OPINION

DAVIS, Associate Presiding Judge:

Appellant challenges the trial court's order terminating his parental rights in the context of an adoption proceeding. We affirm.

## BACKGROUND

Born on April 16, 1984 in Morgan, Kentucky, B.O. is the natural daughter of appellant and L.M. Appellant and L.M. were married and living together at the time of B.O.'s birth; however, the couple separated approximately four months later. Thereafter, L.M. assumed physical custody of B.O. and relocated to Sandy, Utah. Appellant eventually relocated to California. L.M. and appellant divorced, and appellant was or-

dered to pay $25.00 per week in child support.

In Sandy, B.O. resided with her maternal grandparents and her aunt, appellee S.G., after L.M. relinquished physical custody of B.O. During this time, S.G. provided B.O.'s day-to-day care. In December 1991, appellees S.G. and C.G. married. At that time, S.G. moved from her mother's home to live with appellee C.G.; B.O. continued living with her maternal grandmother. Shortly thereafter, once appellees had settled into their new home, B.O. moved in with appellees and has been in their care and custody ever since. Thus, S.G. has been B.O.'s primary caretaker for the past eleven years, meeting B.O.'s day-to-day needs. Moreover, S.G. and C.G. have now filled parental roles for B.O. for nearly three years.

At all relevant times, appellant had knowledge of both an address and telephone number through which he could contact B.O. Moreover, appellees, as well as B.O.'s maternal grandparents, have encouraged B.O. to maintain a relationship with appellant. However, over the past eleven years, appellant has visited B.O. on only two occasions. Appellant's most recent visit occurred in 1992 when L.M. took B.O. to California to see her father.[1] Thus, in the eleven years following his divorce from L.M., appellant initiated only one visit with B.O. At trial, appellant testified that he believed one visit every several years, coupled with one or two phone calls per year, was sufficient to adequately provide B.O. with a father figure.

In addition to this infrequent visitation schedule, appellant placed but one phone call or mailed one card to B.O. every four to six months. Appellant's Christmas and birthday correspondence to B.O. routinely arrived late, if at all. Appellant also made numerous unfulfilled promises to visit B.O. and/or send her special gifts without ever explaining his reasons for breaking them. Moreover, appellant concedes that he is at least $2000 in arrears of his child support obligation.[2] He

1. At trial, appellant contended that L.M. thwarted his attempts to visit B.O. during the Christmas 1994 holiday by threatening to have him arrested for failure to pay child support if he came to Utah. The trial court found appellant's testimony on this matter noncredible and did not include the same in its findings of fact.

2. The evidence presented on appellant's child support obligation was controverted. The figure could be as high as $6392.

also had not paid child support as ordered under his divorce decree for at least two years, and as many as five years, prior to the trial on this matter.[3] Appellant resumed paying child support in June 1995, at least three months after the adoption petition was filed in the present case. Finally, appellant testified that he is unaware of who has been responsible for B.O.'s care during the past eleven years.

Appellees filed their Petition for Adoption on February 23, 1995. Appellant accepted service of the petition on March 28, 1995. On May 30, 1995, appellant filed a notice of opposition to the petition and a petition for child custody, thereby submitting to the jurisdiction of the Third District, Salt Lake Department. With proper notice having been given, a hearing was held on October 10, 1995 to determine whether appellant's parental rights should be terminated. At the hearing, appellant was present and represented by counsel when he withdrew his petition for child custody. After hearing testimony and receiving exhibits into evidence, the trial court took the matter under advisement. On October 31, 1995, the trial court issued its Memorandum Decision terminating appellant's parental rights. On November 29, 1995, the trial court entered its findings of fact and conclusions of law. Based on the facts adduced at trial, the trial court's conclusions of law stated:

1. [Appellees] have proven by clear and convincing evidence that [appellant] has made only token efforts to support and/or communicate with [B.O.];

   2. [Appellant] is an unfit parent as provided in U.C.A. § 78–3a–401 *et seq.* (1953) as amended;

   3. It is in the best interests and welfare of [B.O.] that the parental rights of [appellant] be terminated.

Accordingly, on November 29, 1995, the trial court also entered an order terminating ap-

pellant's parental rights. Finally, the trial court entered a Decree of Adoption on December 7, 1995, declaring appellees the legal parents of B.O. and relieving appellant "of any parental duties and all responsibilities for [B.O.]." This appeal followed.

## ISSUES

Appellant raises three issues for our consideration:[4] (1) Whether the trial court improperly applied Utah Code Ann. § 78–3a–407 (Supp.1995) rather than Utah Code Ann. § 78–30–5 (Supp.1994) (repealed 1995) in terminating his parental rights; (2) whether the trial court's findings of fact are insufficient to support its determination that appellant is an unfit parent or that he only made token efforts to maintain a relationship with B.O.; and (3) whether Utah Code Ann. § 78–3a–407(6) (Supp.1995) unconstitutionally permits the termination of parental rights solely on the basis of token efforts to either communicate with or support a child.

## ANALYSIS

### I. Applicable Statute

■ Appellant initially argues that the trial court applied an improper legal standard in terminating his parental rights. The original petition in this matter was filed in February 1995. Appellant contends:

At that time the standard for determining whether [appellant's] consent was necessary to the adoption was governed by Utah Code Ann. § 78–30–5. However, in the 1995 legislative session, that provision was repealed, replacing the same, effective May 1, 1995, with Utah Code Ann. § 78–3a–407, a broader reaching standard. The Court should have but failed to apply the standard in effect when the Petition was filed.

However, at trial, when notified by the court that the applicable termination criteria were

---

3. At trial, appellant testified that his Rent–A–Center paychecks from September 1993 to June 1995 were garnished to meet his child support obligation. However, both S.G. and L.M. testified that they received no child support payments during that time period. Appellant was unable to produce documentation verifying his testimony.

4. Though appellant's brief enumerates seven issues, five of the seven are related challenges to the trial court's findings of fact and thus are considered together as one issue.

codified at section 78–3a–407, instead of section 78–30–5 upon which he had theretofore relied, appellant stated: "That's fine, because that goes directly to the abandonment issue, which was an argument that I was prepared to make today, was that 78–30–5 didn't go far enough.... We really should be looking at the standard implied, or the standard set forth in 78–[3a]–401, et seq." Appellant cannot both wholeheartedly support the application of a given statute at trial and then on appeal claim the court's application of that same statute was error. Because appellant failed to preserve the issue for appeal, his argument on the matter is without merit. *Rasmussen v. Sharapata*, 895 P.2d 391, 392 n. 2 (Utah App.1995).

However, this does not conclude our consideration of appellant's challenge. In *State ex rel. R.N.J.*, 908 P.2d 345 (Utah App.1995), this court stated: "Under almost all circumstances, 'matters not raised in the pleadings nor put in issue at the trial may not be raised for the first time on appeal.'" *Id.* at 349 (quoting *James v. Preston*, 746 P.2d 799, 801 (Utah App.1987)). This general rule is especially relevant where, as in this instance, factual determinations are at issue. *Id.* at 350. Nonetheless, as further noted in *R.N.J.*, there are three exceptions to this rule: jurisdictional issues, plain error challenges, and exceptional circumstances challenges. *Id.* The latter two exceptions are not argued by appellant. Moreover, concerns over a child's best interests, which on occasion compel appellate courts to relax the requirements of the above given rule, are not paramount in this instance.[5] *Id.* (citing *State ex rel. J.L.W.*, 900 P.2d 543, 549 (Utah App. 1995)). Therefore, only the jurisdictional question remains.

■ During oral argument, appellant raised a jurisdictional challenge to the trial court's application of section 78–3a–407. Specifically, appellant argued that termination of parental rights cases brought under section 78–3a–407 are under the exclusive original jurisdiction of the juvenile court. Utah Code Ann. § 78–3a–16(2)(f) (Supp.1995) (repealed 1995) (current version at Utah

Code Ann. § 78–3a–104(1)(e) (Supp.1996)), in effect at all times relevant to the hearing on this matter, provided:

(2) *Except as otherwise provided by law,* the juvenile court has exclusive original jurisdiction in proceedings:

....

(f) to terminate the legal parent-child relationship in accordance with Part 4, Termination of Parental Rights Act, including termination of residual parental rights and duties.

(Emphasis added.) Meanwhile, Utah Code Ann. § 78–30–4.16(1)(b) (Supp.1996), in effect at the time of the hearing, incorporates by reference section 78–3a–407 in granting district courts jurisdiction to "determine whether proper grounds for termination of [a] parent's rights exist and, if so, order that the parent's rights be terminated *in accordance with the provisions of this chapter or Title 78, Chapter 3a, Part 4, Termination of Parental Rights Act.*" (Emphasis added.) Thus, at the time of trial, the trial court had concurrent jurisdiction over termination of parental rights cases decided pursuant to section 78–3a–407. Accordingly, because section 78–30–4.16 grants the trial court jurisdiction to decide section 78–3a–407 cases, appellant's challenge to the trial court's jurisdiction fails.

## II. Trial Court's Findings Of Fact And Conclusions Of Law

■ Appellant next challenges several of the trial court's findings of fact. "We overturn findings of fact in a parental termination proceeding only if they are clearly erroneous.... To obtain a reversal on clear error grounds, an appellant must marshal all the evidence supporting the challenged findings and then show that despite that evidence, the findings are clearly lacking in support." *State ex rel. M.S. v. Lochner*, 815 P.2d 1325, 1328 (Utah App.1991); *see also* Utah R. Civ. P. 52(a); *State ex rel. P.H. v. Harrison*, 783 P.2d 565, 566 n. 1 (Utah App.1989). Here, appellant fails to marshal the evidence supporting the trial court's findings, and instead, simply reiterates facts supporting his posi-

---

5. This is not to say we' are not concerned with B.O.'s welfare. Rather, we are confident that the

child's best interests are not compromised by the application of section 78–3a–407 in this case.

tion. Hence, appellant does not satisfy his marshaling burden.

Even if appellant had properly marshaled the evidence, we could not say that the trial court's factual findings are clearly erroneous. "We reverse on [insufficiency of the evidence] ground[s] only if, upon viewing the evidence in the light most favorable to the trial court's findings, those findings run against the clear weight of the evidence, or we are otherwise definitely convinced that a mistake has been made." *State ex rel. J.C. v. Cruz*, 808 P.2d 1131, 1136 (Utah App.1991). Appellant claims the trial court "should have found that [appellant's] attempts to visit B.O. over the Christmas 1994 Holiday were thwarted by [L.M.]." The trial court found that appellant had only visited B.O. two times during the eleven years preceding the filing of appellees' petition to terminate appellant's parental rights. Moreover, the record shows that appellees and B.O.'s grandparents, the individuals solely responsible for B.O.'s custody and care over the past eleven years, encouraged a continuing relationship between B.O. and appellant. Even if the trial court had found that appellant's 1994 attempt to visit B.O. was thwarted by L.M., or, assuming arguendo, if appellant had followed through with his intention to visit B.O. during the Christmas holiday despite L.M.'s alleged counterproductive acts, one additional visit over an eleven year period does little to overcome the clear weight of the evidence presented at trial.

Appellant also claims that "the trial court erred in finding that [appellant] had failed to pay child support for at least two years and possibly as long as five years." Appellee S.G., L.M., and B.O.'s maternal grandmother all testified to having received no support payments during the period at issue. Also, appellant did not produce a single document to corroborate his claim that he indeed had been paying child support. Appellant also admitted to being at least two thousand dollars in arrears of his twenty-five-dollars-per-week child support obligation. Hence, based on the record, and with proper deference being paid to the trial court's superior ability to "observe factors bearing on credibility," *State ex rel. R.A.F.*, 863 P.2d 1331, 1333

(Utah App.1993), we cannot say that the trial court's findings regarding appellant's attempt to visit B.O. and his unpaid child support were against the clear weight of the evidence. Because none of the trial court's factual findings are clearly erroneous, we accept them as correct for purposes of determining token efforts. *Id.* at 1334.

Appellant next contends that the trial court abused its discretion in determining that appellees proved by clear and convincing evidence that he had made only token efforts to support and/or communicate with B.O. Utah Code Ann. § 78–3a–407(6)(a) (Supp. 1995) provides, in relevant part: "The court may terminate all parental rights with respect to one or both parents if it finds ... that only token efforts have been made by the parent ... to support or communicate with the child." To successfully challenge the trial court's determination of token efforts under section 78–3a–407, appellant must show that the trial court abused its discretion. *See R.A.F.*, 863 P.2d at 1333 (applying abuse of discretion standard to abandonment case; abandonment grounds for termination presently codified along with token efforts grounds at section 78–3a–407).

■ We do not agree that appellant's characterization of the evidence upon which he relies, namely that his "contact with B.O. [which] occurred primarily in the form of letters, gifts, and telephone calls rather than by face-to-face contact[,] is sufficient [to] prevent termination of his parental rights." Appellant attempts to characterize his contacts with B.O. as being distinguishable from the facts of the cases relied upon by the trial court. In particular, appellant challenges the trial court's reliance on *R.A.F.* and *In re J. Children*, 664 P.2d 1158 (Utah 1983).

Noting that "[t]here is little guidance in the statute or case law as to what parental actions constitute 'token efforts,'" the trial court looked to cases decided on abandonment grounds under earlier termination of parental rights statutes. In *R.A.F.*, this court affirmed a juvenile court's order terminating the parental rights of a father on abandonment grounds upon evidence that he had visited the child only four or five times over a two year period. 863 P.2d at 1334–35.

Appellant challenges the application of *R.A.F.* to this case because "in *R.A.F.* the Defendant did not write any letters or make any telephone calls to the child during [the relevant time period], the Plaintiff made significant efforts to allow defendant to exercise visitation rights . . . and the Defendant went to great lengths to avoid paying child support." Appellant here asserts, "[b]y contrast, in this case it is undisputed that [appellant] sent birthday and Christmas gifts, cards and letters, and placed telephone calls." [6] However, appellant ignores the trial court's factual finding, which is clearly supported by the record, that appellant's "letters, gifts, and telephone calls," by his own admission, rarely exceeded two instances per year. The court also found that appellant's Christmas and birthday correspondence with B.O. often arrived after the event had passed, if at all. Finally, the trial court determined that appellant was substantially in arrears of his modest child support obligation. Under such circumstances, use of the abandonment analysis to determine token efforts is not inappropriate and the trial court did not abuse its discretion in analogizing the abandonment analysis of *R.A.F.* to a determination of token efforts. For the same reasons, the trial court's reliance on *J. Children*, another case decided on abandonment grounds, was not an abuse of discretion. Thus, accepting the trial court's factual findings as correct, we cannot say that the trial court abused its discretion in applying section 78–3a–407(6)(a) to the facts presented to the trial court. Accordingly, appellant's challenges to the trial court's application of section 78–3a407(6)(a) fail.[7]

### III. Constitutionality Of Section 78–3a–407(6)(a)

Finally, appellant presents a facial challenge to the constitutionality of section

78–3a–407(6), claiming that the statute "is violative of [appellant's] fundamentally protected rights under Amendments IX and XIV of the Constitution of the United States, and Article I, §§ 7 and 25 of the Constitution of Utah." In doing so, appellant presents a laundry list of United States and Utah Supreme Court decisions in support of his assertion that "Utah Code Ann. § 78–3a–407(6), which permits termination upon *either* token efforts to support *or* communicate with [B.O.], is a standard insufficient to overcome [appellant's] countervailing and constitutionally protected parental rights." We agree with appellant's assertion that "a parent has a fundamental right to maintain a relationship with his or her child." This right is by now well established by both United States and Utah precedent. *See generally Santosky v. Kramer*, 455 U.S. 745, 753–55, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982); *In re J.P.*, 648 P.2d 1364, 1372–74 (Utah 1982).

Citing *J.P.*, appellant claims that section 78–3a–407(6) "does not rise to a showing of unfitness, abandonment, or substantial neglect as is required" to overcome his fundamental right to maintain a relationship with B.O. In *J.P.*, the Utah Supreme Court decided whether an involuntary termination of parental rights, based solely on a showing of the best interest of the child, was violative of a mother's constitutionally protected parental rights. Holding in the affirmative, the supreme court concluded:

> The Utah Constitution recognizes and protects the inherent and retained right of a parent to maintain parental ties to his or her child under Article I, § 7 and § 25, and that the United States Constitution recognizes and protects the same right under the Ninth and Fourteenth Amend-

---

6. Appellant fails to mention that the defendant in *R.A.F.* similarly claimed to have given his child numerous birthday and Christmas gifts despite the trial court's finding to the contrary.

7. Appellant also challenges the trial court's finding that "he is an unfit parent as defined in the 'Termination of Parental Rights Act' Utah Code Ann. § 78–3a–401 *et seq.*" Because we find that the trial court had sufficient evidence to terminate under the token efforts prong of section 78–

3a–407, we need not address alternative grounds. *State ex rel. G.D. v. L.D.*, 894 P.2d 1278, 1283 (Utah App.1995). Similarly, appellant attacks the trial court's factual findings as being "more accurately characterized as conclusions of law, which renders difficult the process of challenging the same." Because appellant's legal argument in support of this challenge lacks merit, we decline to address it. *Woodward v. Fazzio*, 823 P.2d 474, 475 n. 2 (Utah App.1991).

ments. We further conclude that, under both Constitutions, a [parent] is entitled to a showing of unfitness, abandonment, or substantial neglect before [his or] her parental rights are terminated.

648 P.2d at 1377. This showing of unfitness, abandonment, or substantial neglect must be by clear and convincing evidence. *Id.* However, the court adhered to the notion that the child's welfare remains the paramount consideration, noting,

The principle that "the welfare of the child is the paramount consideration" means that parental rights, though inherent and retained, are not absolute; that the state, as *parens patriae*, has the authority and obligation to assume a parental role after the natural parent has been shown to be unfit or dysfunctional; and that parental prerogatives cannot, at that extreme point, frustrate the state in discharging its duty.

*Id.*

Since *J.P.* was decided, several decisions have affirmed the termination of parental rights based on a parent's failure to communicate and/or pay child support. For instance, in *State ex rel. J.R.T. v. Timperly*, 750 P.2d 1234 (Utah App.1988), this court affirmed a juvenile court termination order based on abandonment where the father had failed to contact his child over a sixteen month period. In doing so, this court relied on the two-pronged abandonment test established in *State ex rel. Summers Children v. Wulffenstein*, 560 P.2d 331 (Utah 1977). Under this test, the court considers, "first, whether the parent's conduct evidenced a conscious disregard for his or her parental obligations, and second, whether that disregard led to the destruction of the parent-child relationship." *J.R.T.*, 750 P.2d at 1236; *see also Summers Children*, 560 P.2d at 334. Under this test, "[a]bandonment may be proven by either the parent's objective conduct or the parent's expressed subjective intent." *J.R.T.*, 750 P.2d at 1236. Because the father "offered no evidence of contact nor any reasonable excuse for his extended lack of contact with the child," the *J.R.T.* court affirmed the juvenile court's termination order. *Id.* at 1237.

Similarly, in *R.A.F.*, this court affirmed the termination of a father's parental rights where he had seen his child "only four or five times from September 1987 to September 1988 and not at all from September 1988 through January 1990." 863 P.2d at 1333. R.A.F. was born in September 1986, and thus was three years old when the child's mother filed for termination of the father's parental rights. *Id.* at 1332. Also, the father had failed to pay court-ordered child support since the annulment of his marriage to R.A.F.'s mother in November 1987. Finally, the trial court determined that R.A.F.'s father had not provided the child with the numerous toys and gifts which he testified he had. *Id.* at 1334. On appeal, the father challenged the trial court's factual findings on visitation, child support, and gifts given to R.A.F.

On all three challenges, as in the case presently before us, R.A.F.'s father relied on his own testimony to challenge the trial court's factual determinations, and on all three challenges this court deferred to the trial court's factual findings noting that the trial court found the father's testimony unreliable. Given that the "trial court is in a better position to observe factors bearing on credibility," *id.* at 1333, and in light of the evidence opposing R.A.F.'s father's account of the facts, this court was not able to say that the *R.A.F.* court's findings were clearly erroneous. Accordingly, having accepted those findings as correct, and noting that "[s]everal other Utah cases have found abandonment based solely on a parent's lack of visitation and communication," *id.* at 1334 (emphasis added) (citing *In re Guzman*, 586 P.2d 418, 419 (Utah 1978); *State ex rel. M.W.H. v. Aguilar*, 794 P.2d 27, 29 (Utah App.1990); *J.R.T.*, 750 P.2d at 1236–37)), this court upheld the juvenile court's termination of R.A.F.'s father's parental rights on abandonment grounds. *Id.* at 1335.

Recently, in *State ex rel. E.R.*, 918 P.2d 162 (Utah App.1996), this court reaffirmed the holding that "abandonment will be upheld 'based solely on a parent's lack of visitation and communication.'" *Id.* at 167 (quoting *R.A.F.*, 863 P.2d at 1334). In *E.R.*, "after sending [E.R. a] gift in January 1994 and

after he knew how to contact [E.R.], defendant never sent cards or gifts to E.R. to let her know that she had a father who was interested in establishing a parent/child relationship with her." *Id.* at 166–67. Under these facts, and after a review of case law decided on facts similar to the facts present in *E.R.*, this court noted that "defendant had 'an obligation ... to vigorously pursue the fruits' of his parental rights, but failed to do so." *Id.* at 167 (quoting *State ex rel. Orgill*, 636 P.2d 1075, 1077 (Utah 1981)). Moreover, "[a] lack of visitation and communication with a party's child or children evidences a conscious disregard of parental obligations, which leads 'to the destruction of the parent-child relationship.'" *Id.* (quoting *R.A.F.*, 863 P.2d at 1334). Thus, the termination of E.R.'s father's parental rights was affirmed on abandonment grounds where the father had failed to communicate with his child.

Accordingly, although not decided in the context of constitutional challenges, our review of Utah case law yields numerous instances where the termination of parental rights, usually on abandonment grounds, was affirmed based on a parent's failure to communicate with his or her child. Thus, failure to communicate, by itself, has repeatedly been held to support a showing of abandonment in overcoming a parent's fundamental right to maintain a relationship with his or her child. Accordingly, we reject appellant's contention that section 78–3a–407(6)(a) is unconstitutional because it "permits termination upon *either* token efforts to support *or* communicate with the child." [8]

Moreover, appellant presents no justification for us to differentiate between the abandonment cases relied upon by the trial court, or those cited herein, and the token efforts grounds upon which his parental rights were terminated.[9] "Token" is defined as "merely simulated; slight or of no real account." *Webster's New Twentieth Century Dictionary* 1919 (2d ed. 1979). The abandonment cases discussed previously, and the facts of many of those cases in particular, amply demonstrate instances in which parents took "slight or no real account" of their parental duties, thus justifying the termination of their parental rights. In light of these cases and the absence of specific "token efforts" precedent, we cannot say that the trial court abused its discretion by utilizing abandonment cases in reaching its token efforts conclusion. Accordingly, appellant's challenge to the constitutionality of section 78–3a–407(6) also fails.

## CONCLUSION

Because we hold that all three of appellant's challenges to the trial court's findings of fact and conclusions of law fail, we affirm the trial court's termination of appellant's parental rights. James Z. Davis, Associate Presiding Judge.

BILLINGS and WILKINS, JJ., concur.

---

8. We note that the trial court found that appellees had "proven by clear and convincing evidence that [appellant] ... made only token efforts to support *and/or* communicate with [B.O.]." (Emphasis added.) Thus, the trial court added the conjunctive "and" to the "support or communicate" language of section 78–3a407(6)(a), thereby signifying the dual grounds under that section upon which the trial court terminated appellant's parental rights. Because we find the failure to communicate portion of section 78–3a–407(6)(a) is adequate, in and of itself, to overcome appellant's fundamental parental rights, we do not address his challenge to the failure to support portion of the statute.

9. Though the trial court relied on token efforts, unfitness, and best interests grounds in terminat-

ing appellant's parental rights, we note that the trial court's findings of fact also present a prima facie case of abandonment, codified at Utah Code Ann. § 78–3a–407(1) (Supp.1995), as defined in Utah Code Ann § 78–3a–408(1)(b) (Supp.1995):

(1) In determining whether a parent or parents have abandoned a child, it is prima facie evidence of abandonment that the parent or parents:

....

(b) have failed to communicate with the child by mail, telephone, or otherwise for six months *or* failed to have shown the normal interest of a natural parent, without just cause.

*Id.* (emphasis added).